## AMERICAN BUREAU OF SHIPPING v. ALLIED OIL CO., Inc.

### No. 6161.

Circuit Court of Appeals, Sixth Circuit.
April 6, 1933.

F. A. Bull, of New York City, and Frederick L. Leckie, of Cleveland, Ohio (Duncan & Mount, of New York City, and Holding, Duncan & Leckie, of Cleveland, Ohio, on the brief), for appellant.

Charles W. Sellers, of Cleveland, Ohio (Thompson, Hine & Flory, McKeehan, Merrick, Arter & Stewart, and George W. Cottrell, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The appellant was the defendant and the appellee the plaintiff below, and will be so designated. The suit was based upon negligence in the performance by the defendant of a contractual duty to properly inspect and report upon the condition of a vessel being purchased by the plaintiff, and from judgment on verdict of the jury the defendant appeals.

In so far as the facts are undisputed, it appears that in September, 1929, the plaintiff, an Ohio corporation, was negotiating for the purchase of the oil tank steamer Crudoil from the Huasteca Petroleum Company, the vessel being then in dry dock at New Orleans. The defendant is a New York corporation, with offices in the principal ports of the United States, including Cleveland and New Orleans. It inspects, classifies, and gives ratings to ships, and reports upon their condition, holding itself out as expert in that respect. The plaintiff employed the defendant to inspect and report upon the condition of the steamer Crudoil, informing the defendant that it contemplated the purchase of the vessel, and that it required knowledge of its condition before making such purchase. The defendant, for an adequate consideration, accepted the employment, and its inspector at New Orleans made inspection and reported orally to the plaintiff's representative that the ship was in seaworthy condition, and entitled to A-1 rating, a classification of the first class. The preliminary oral report was later confirmed in writing. Relying at least upon the defendant's oral report, the plaintiff purchased the ship.

The vessel was used by the plaintiff for about six weeks in salt water, and was then brought to the Great Lakes by way of the St. Lawrence river. After a number of voyages on the lakes, and after sundry mishaps, which have little apparent bearing upon the issues involved, the steamer was tied up in the Cuyahoga river at Cleveland at the close of navigation December 1, 1929. Some time in December the plaintiff organized a subsidiary company called the Allied Oil Transport Company, Inc., and transferred to it title to the boat. Early in January, 1930, the ship was dry-docked at Cleveland and examined by United States government inspectors, who found six side plates so wasted and corroded that they had to be replaced, anchor chains rusted away so that all but a few fathoms had to be renewed, and approximately nine thousand rivets in the bottom plating so wasted and corroded that they also had to be replaced. Repairs were made and paid for by the plaintiff, entailing an expenditure of approximately $21,000.

There is no controversy as to the condition of the boat when dry-docked at Cleveland. The factual issue as to negligence presented by the evidence is whether the condition found at Cleveland was substantially the boat's condition when it was inspected at New Orleans, or whether the corrosion and deterioration took place during the four months that the vessel was being navigated in salt water and on the Great Lakes by the plaintiff.

Upon this issue evidence was submitted that the ship was in salt water but six weeks subsequent to its purchase; that corrosion takes place on the sea, but seldom if ever in fresh water; that the defective rivets were corroded, some of them for a quarter of an inch below the plates, and some of them for an eighth of an inch; that the extent of the corrosion rendered the ship unsafe; that the plates were rusted so badly that in places.one could look through and see pin holes of light, and that a large proportion of each of the plates had no real strength left in them; that the anchor chains were so corroded that after they were beaten a little with a hammer to knock off the loose rust they were down below the requirement of the American Bureau of Shipping; that the corrosion found in rivets, plates, and chains could not have taken place in six weeks of navigation in salt water; that the government steamboat inspectors at Cleveland had required the repairs to be made in order that the vessel might go to sea; that Mr. Herriman, vice president and general manager of the defendant for the Great Lakes region, had admitted when inspecting the boat in dry dock at Cleveland that it was in bad shape; that the government inspectors were not too critical in the work they insisted on having done by way of repair; that the defendant's inspector at New Orleans had been negligent, and had made a very casual survey which did not give the plaintiff a true picture of the condition of the boat. Much, if not most, of this evidence was disputed, and the admissions claimed to have been made by Herriman were by him denied.

All that can or need be said with respect to the issue of negligence is that the conflicting evidence presented an issue of fact to be submitted to the jury. It was submitted in a charge exceptionally clear and unusually exhaustive. We have said too often to

require citation that this court cannot weigh the evidence nor pass upon the credibility of witnesses. Complaint is made that the plaintiff did not attempt to show the steamer's actual condition at New Orleans, but relied on the testimony of experts to overcome the positive testimony of the defendant's surveyors at New Orleans. Manifestly there is no just ground for the complaint. The plaintiff employing the defendant to make an expert survey of the boat, and relying upon such survey, was clearly in no position to meet direct evidence with evidence of like nature, nor was it under obligation to do so. It presented evidence of the condition that was found in dry dock at Cleveland, together with the opinion of experts as to the rate at which corrosion takes place. Circumstantial evidence from which reasonable inferences may be drawn will sustain a verdict.

On the question of damages the court permitted the jury to measure the loss suffered by the reasonable cost of the repairs made. This is assigned as error, the contention being that the true measure of damages is the difference between the purchase price and the fair market value of the steamer at New Orleans at the time of inspection. Aside from the fact that no exceptions were taken to the evidence submitted showing the cost of the repairs, that the motion for a directed verdict was not based upon the lack of substantial evidence of damage, and that no exceptions were taken to the instructions of the court upon the measure of damages, we think the proper measure of damages was applied. Williamson et al. v. Barret, 54 U. S. (13 How.) 101, at page 110, 14 L. Ed. 68; Ohio Collieries Co. v. Cocke, 107 Ohio St. 238, 140 N. E. 356.

Some point is made as to the right of the plaintiff to recover in view of the fact that it had sold the vessel to its subsidiary, The Allied Oil Transport Company, Inc., prior to the time the repairs were made and paid for. We think it is without merit. The plaintiff's right of action accrued the instant the boat was accepted in reliance upon the defendant's report. 1 Sutherland on Damages (4th Ed.) § 7, p. 26; Sedgewick on Damages (9th Ed.) §§ 226–230. In so far as the sale to the subsidiary bears upon the amount of damages suffered rather than upon the plaintiff's right of action, we think the defendant precluded from questioning the plaintiff's claim to damages. At the trial the plaintiff offered to show that it had given a warranty to the Allied Transport Company as to the condition of the ship. Upon the defendant's objection, the proffered testimony was excluded. Aside from any question of implied warranty, we think the necessary implication from both the offer and the objection to be that there was an express warranty either as to seaworthiness or as to classification, or both. Such warranty imposed upon the plaintiff an obligation to respond in damages to its vendee in an amount reasonably to be measured by the cost of repair. This being so, we find it unnecessary to decide whether in view of the relationship of vendor to vendee, the distinct corporate entity of the latter should be recognized or ignored.

Nor were the damages found excessive because of the fact that no allowances were made for discount. Not only is there no proof that the defendant obtained discount upon the major invoices covering the repairs, but the uncontradicted evidence is that the invoice price of the repairs fairly measured the reasonable value of the damage suffered. Moreover, no objection was made to the introduction of the invoices as indicating the reasonable cost of the repairs, and in addition no exception was reserved to the court's instruction upon that point.

The judgment below is affirmed.