Everest Melvin HUPMAN, also known as Melvin E. Hupman, Appellant,

v.

UNITED STATES of America, Appellee.

No. 12203.

United States Court of Appeals, Sixth Circuit.

Feb. 7, 1955.

See also 127 F.Supp. 432.

Marshall Perlin, New York City, and J. Paul Prear, Dayton, Ohio (Donner, Kinoy & Perlin, David Scribner, New York City, on the brief), for appellant.

Thomas Stueve, First Asst. U. S. Atty., Cincinnati, Ohio (Hugh K. Martin, U. S. Atty., George S. Heitzler, Asst. U. S. Atty., Cincinnati, Ohio, on the brief), for appellee.

Before SIMONS, Chief Judge, and MILLER and STEWART, Circuit Judges.

SIMONS, Chief Judge.

The appellant was convicted on January 15, 1954 upon an indictment filed in the United States District Court for the Southern District of Ohio, containing two counts, each charging the appellant with violating § 1001 of Title 18 U.S.C., in that he made a false, fictitious and fraudulent affidavit, as a Non-Communist Union Officer. He was sentenced separately on each count but the prison sentences were made to run concurrently. Upon his appeal, he presents nineteen separate specifications of error with some

of them divided under multiple subheads, each claim of error being fully, and with great emphasis, argued in his brief.

We have given careful consideration to them all, realizing, as we said in Stumbo v. United States, 6 Cir., 90 F.2d 828, 833, that where everything is emphasized, it often results that there is no emphasis and that substantial error might be overlooked in the unnecessary massing of insubstantial complaints. The extravagant and unnecessary multiplications of exceptions and assignments of error have often been condemned, Badders v. United States, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706; Central Vermont Railway Co. v. White, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433. In Gariepy v. United States, 6 Cir., 189 F.2d 459, 461, we noted the observation in the dissent of Mr. Justice Holmes in United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 304, 66 L.Ed. 619, " 'If this case raised a question of pleading I should go far in agreeing to disregard technicalities that were deemed vital a hundred or perhaps even fifty years ago.' "

 In respect to the sufficiency of an indictment, it has been repeatedly held, as in the Behrman case, supra, "It is enough to sustain an indictment that the offense be described with sufficient clearness to show a violation of law, and to enable the accused to know the nature and cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution for the same offense." The indictment, in the present case, was thoroughly considered by Judge Martin of this court when sitting, by designation, in the District Court, he denied a motion to dismiss it for failure to state an offense. With his well considered views developed in his memorandum opinion of January 29, 1953, we are in full accord.

The statute under which the appellant was indicted is Title 18 U.S.C. § 1001. It is printed in the margin.[1] It is incorporated by reference in § 159(h) of the Taft-Hartley Act, Title 29 U.S.C.A., which is likewise printed in the margin.[2]

The major controversy revolves about the admission into evidence of an Affidavit of Non-Communist Union Officer, purporting to be signed and sworn to by the appellant, which was found in the files of the Labor Board at Washington. That affidavit is printed in the margin.[3]

1. "Statements or entries generally
"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

2. "(h) No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board an affidavit executed contemporaneously or within the preceding twelve-month period by each officer of such labor organization and the officers of any national or international labor organization of which it is an affiliate or constituent unit that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provisions of sections 286, 287, 1001, 1022, and 1023 of Title 18 shall be applicable in respect to such affidavits. As amended June 23, 1947, 3:17 p. m. E. D. T., c. 120, Title 1, § 101, 61 Stat. 143; Oct. 22, 1951, c. 534, § 1 (c, d), 65 Stat. 601."

3. "Government's Exhibit 1.
"United States of America
"National Labor Relations Board
"Affidavit of Noncommunist Union Officer
"(See instructions on reverse)
"The undersigned, being duly sworn, deposes and says:
"1. I am a responsible officer of the union named below.
"2. I am not a member of the Communist Party or affiliated with such party.

It was made upon a printed form provided by the Labor Board and appears to be regular upon its face. The question, therefore, is not one of "admissibility" but whether, by itself alone, without support of the notary or identification of signature, it can support a jury verdict which, necessarily, requires a finding of fact by the jury that it was signed and sworn to by the appellant and that he either filed it or caused it to be filed with the Labor Board.

We turn, therefore, to the record which we have taken great pains to review. Virginia Bantel was the Legal Examiner for the Cincinnati office of the Labor Board. Her duties included determining the sufficiency of documents filed by labor organizations which desired to comply with §§ 9(f, g, h) of the National Labor Relations Act, correspondence with those organizations and maintaining records concerning their compliance with the requirements of the Act. She received the documents, determined their completeness and, if all the papers had not been received, she requested those that were missing. When she determined that all of the documents received were complete, she placed the Union in compliance by letter. She then sent the documents to the Washington office of the Board for permanent filing. While she had no personal or independent recollection of the receipt of the affidavit here involved, and the affidavit itself contains no identifying marks as to how it got to her office, it was her office practice to maintain notes in her files and upon reference to such notes she testified that she received the affidavit on January 5, 1950, along with other documents at her Cincinnati office from Frigidaire Local 801 of the United Electrical Radio & Machine Workers of America, of Dayton, Ohio. On the same day, she determined that the proposed filings were not complete so she requested Mr. Lem Markland, president of the Local Union, by letter, to submit additional documents. Compliance with this request was received on January 12, 1950. One of the requested documents was not in order, so, she again wrote to Markland and received the corrected document on January 17, 1950. On the latter date, she notified Markland by mail that the Union was in full compliance with the requirements of the National Labor Relations Act, as amended, under §§ 9(f, g) and (h), and, on the same day, sent the documents to Washington for permanent filing. Her notes indicated that she requested the Constitution and D. L. (Department of Labor letter) on January 5. She testified further that had the documents been delivered personally, she would have asked for the missing documents orally. Her notes also indicate that the correspondence should be sent to Mr. Markland. The Cincinnati office receipt stamp was not on the original affidavit and she had nothing to do with the date that was upon the photostatic copy thereof in evidence.

 Had the record shown nothing more, we should be obliged to reverse. We do not agree with the government's contention that because the affidavit appears regular upon its face and was found in the files of the Labor Board that that would sustain the jury's verdict, nor do we agree with its contention that

"3. I do not believe in, and I am not a member of nor do I support any organization that believes in or teaches the overthrow of the United States Government by force or by any illegal or unconstitutional methods.
"Frigidaire Local 801
"United Electrical, Radio & Machine Workers of America (UE)
"Signature: Melvin E. Hupman
"Address: R # 6 Box 370
"Dayton, Ohio
"(Perforated)
"REC'D

"1/18/50
"NLRB
"Subscribed and sworn to before me this 15 day of December, 1949.
"A notary public or other person authorized by law to administer oaths and take acknowledgments in and for the county of Montgomery, State of Ohio.
"My commission expires Jan. 31, 1952.
"George W. White
"George W. White, Notary Public
In and For Montgomery County, Ohio
"My Commission Expires Jan. 31, 1952
"(Seal)"

the gist of the crime is the making of the false statement, if there is no proof that the affidavit had been delivered to the Board and placed on file. Until it is filed, the Board is not empowered to deal with it or to act in the light of it and it is not yet a matter which comes within its jurisdiction. United States v. Valenti, 3 Cir., 207 F.2d 242, 244; Reass v. United States, 4 Cir., 99 F.2d 752; United States v. Borow, D.C.N.J., 101 F. Supp. 211. Moreover, in the absence of further proofs, there would have been nothing to show that the appellant signed and swore to the affidavit, filed, or caused it to be filed. The mere fact that an affidavit is found in the files of an agency of the United States is not enough, for the government still has the burden of proving that the appellant had filed or caused it to be filed with the Board.

 But the fact that the affidavit was found in the files of the Labor Board, without any notation thereon indicating by whom it was filed, does not stand alone in the record. Two witnesses, Dunham and Strunk, while ostensibly members of the Communist Party, were giving information to the Federal Bureau of Investigation, with respect to Communist meetings and activities. Dunham testified as to a meeting that took place at the appellant's home in January or February of 1950, at which the appellant and his wife, Dunham and Joe Brant were present. Brant was the labor organizer for the Communist Party for the State of Ohio. There, Brant said to the appellant: "Since you signed this affidavit, the Taft-Hartley affidavit, read the Worker, the literature; don't pay any dues but contribute, support the Party and don't attend any closed meetings." The appellant replied, saying he would go along with that. Dunham and the appellant were both employees at the Frigidaire plant, in Dayton. Strunk had joined the Communist Party in 1944, became Financial Secretary of the Dayton branch, held that office from 1945 till the latter part of 1952 and attended Executive Board Meetings. He attended a meeting at the appellant's home on December 3, 1949. The appellant and his wife and Martin Chancy were present. Chancy was State Chairman of the Communist Party in Ohio. Strunk testified that Chancy said the following at that meeting: "Five communist members would have to sign the Taft-Hartley affidavit, and the same five should not attend any meetings after he had signed it, not pay any dues; just donate every month so much money. He should meet as an individual group which would be called the Taft-Hartley group." Strunk also testified that during 1950 the Taft-Hartley group was added to three other groups already in existence; that at a registration meeting at appellant's home, in 1950, the appellant was re-registered and assigned to the Taft-Hartley group; that this group consisted of four other party members who had signed Taft-Hartley affidavits. The group included Markland, the president of the Local, with whom Miss Bantel had had her correspondence. Neither Dunham's nor Strunk's evidence was traversed nor successfully shaken by cross-examination. Circumstantial evidence from which reasonable inferences may be drawn will sustain a verdict. American Bureau of Shipping v. Allied Oil Co., 6 Cir., 64 F.2d 509; Stumbo v. United States, supra. We think the record presents circumstances which warrant a reasonable inference that the appellant signed and either filed, or caused to be filed, the affidavit here involved. His reply to Brant, his instructions from Brant and Chancy, his membership in the Taft-Hartley group permit no other inference. The contention that appellant's reply to Brant at the 1950 meeting, if construed as an admission, was not sufficiently corroborated to establish the *corpus delicti* but was merely an uncorroborated extra-judicial statement, must be rejected. In the recent case of Opper v. United States, 348 U.S. 84, at page 93, 75 S.Ct. 158, 164, the Supreme Court, after discussing two views of the necessary quantum of corroborative evidence, came to this conclusion: "However, we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to estab-

lish the *corpus delicti*." So viewed, the presence of the affidavit in the files of the Labor Board is fully explained.[4]

■ Equally without merit, is the appellant's complaint that the government did not prove that the appellant was a Communist on the date the affidavit was signed, or when it was filed. His argument is that even though he had been a Communist, there is no presumption that such status continued to the critical date and, even if so, the presumption must yield to the more fundamental presumption of "innocence." That may well be the rule, for the law takes cognizance of the probability, and even the possibility, of a change of allegiance or affiliation, especially if the proof of status is confined to a time remote from the date of the offense charged. Here, the evidence contains cumulative proof of membership in the Communist Party, not only up to the critical date but thereafter. The appellant's argument seems to be that unless there is direct proof that appellant was a Communist on the very day the affidavit was signed or filed, the proof of violation fails. This impresses us as an absurdity, especially when the evidence shows that the appellant's instructions were to avoid external indications of Communist membership while still maintaining connection with and giving support to the Party.

■ Equally lacking in persuasion is the complaint that the indictment was insufficient because of its failure to charge that the false statement was material or that the statement was made in a matter within the jurisdiction of a department of the United States. Both affidavit and indictment, in effect, proclaim materiality and jurisdiction. The appellant clearly was advised of the charge he had to meet and with specific identity to preclude the danger of double jeopardy. The special attack upon the second count of the indictment, because of the failure of the Court correctly to instruct the jury as to what is meant by "affiliation," is equally without merit. Even if erroneous, it was not prejudicial because of the rule that a sentence will be sustained if it can be supported on one count of a multi-count indictment.[5]

■ Nor is there any virtue in the grievance that the appellant was not shown to have been an officer of the Union. The evidence shows that he was, at various times, an officer. His membership in the Taft-Hartley group indicates it and the affidavit states it. There being sufficient proof warranting the jury in finding that he signed the affi-

---

4. The mere fact that the affidavit was in the custody of the Board on January 5th unaccompanied by the necessary additional documents does not mean that it was filed on that date.

5. "Count One
"That on or about December 15, 1949, in the Southern District of Ohio, Western Division, Everest Melvin Hupman, aka Melvin E. Hupman, the defendant herein, in a matter within the jurisdiction of the National Labor Relations Board, an agency of the United States, did unlawfully, willfully, and knowingly in an 'Affidavit of Non-Communist Union Officer' (Form NLRB–1081) make a false, fictitious and fraudulent statement and representation, to-wit, that he was not a member of the Communist Party when in truth and fact the said Everest Melvin Hupman, aka Melvin E. Hupman, then and there well knew such statement to be false. fictitious and fraudulent as he then and there well knew he was a member of the Communist Party.

"Count Two
"That on or about December 15, 1949, in the Southern District of Ohio, Western Division, Everest Melvin Hupman, aka Melvin E. Hupman, the defendant herein, in a matter within the jurisdiction of the National Labor Relations Board, an agency of the United States, did unlawfully, willfully, and knowingly in an 'Affidavit of Non-Communist Union Officer' (Form NLRB–1081) make a false, fictitious and fraudulent statement and representation, to-wit, that he was not affiliated with the Communist Party when in truth and fact the said Everest Melvin Hupman, aka Melvin E. Hupman, then and there well knew such statement to be false, fictitious and fraudulent as he then and there well knew he was affiliated with the Communist Party.

"A True Bill.
"Ray J. O'Donnell
"United States Attorney
"Wm. R. Wilson
"Foreman"

davit and caused it to be filed, he can not now complain, if the jury took him at his word.

A substantial part of the appellant's brief is devoted to an attack upon the Court's instructions to the jury and the denial of many of his requests to charge. The seventy-nine special requests submitted by the appellant, many of them repetitious and nearly all of them of the most highly technical nature, would seem to suggest a technique, not without precedent, of confusing the jury and leading the Court into error in an explosive criminal trial. We have given careful consideration to the instructions of the Court to the jury. They were fair, substantially covered the crucial questions of law, with a careful analysis of the elements of the offense charged. The patience of the District Judge was severely tried by the continual interruptions, exceptions, and complaints of appellant's counsel. He remained commendably calm and impartial. The appellant was given a fair trial. We find no prejudicial error in his charge and no merit in the claims of error not herein specifically discussed.

The judgment is affirmed.