**Avalo Allison FISHER, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 14731.**

United States Court of Appeals Ninth Circuit.

Feb. 15, 1956.

Rehearing Denied April 18, 1956.

C. T. Hatten, John Caughlan, Seattle, Wash., R. Max Etter, Spokane, Wash., for appellant.

Charles P. Moriarty, U. S. Atty., Richard D. Harris, Asst. U. S. Atty., Seattle, Wash., John F. Lally, Marvin B. Segal, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before DENMAN, Chief Judge, BONE, Circuit Judge, and BYRNE, District Judge.

DENMAN, Chief Judge.

Fisher appeals from a conviction on four counts of violating 18 U.S.C. § 1001 by filing non-communist affidavits in the years 1951 and 1952 to comply with 29 U.S.C.A. § 159(h), the Taft-Hartley Act, which contained false statements about his memberships and affiliations. He contends that the indictment was defective in three respects, that the trial judge erred in excluding and admitting evidence, that the jury was improperly instructed, and that the United States failed to prove a case against him.

The relevant statutes provide as follows:

> "§ 1001. Statements or entries generally
>
> "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.
>
> § 159(h).
>
> "No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees, raised by a labor organization under subsection (c) of this section, and no complaint shall be issued pursuant to a charge made by a labor organization under subsection (b) of section 160 of this title, unless there is on file with the Board *an affidavit* executed contemporaneously or within the preceding twelve-month period *by each officer of such labor organization* and the officers of any national or international labor organization of which it is an affiliate or constituent unit *that he is not a member of the Communist Party or affiliated with such party,* and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods. The provision of section 35A of the Criminal Code [now 18 U.S.C. § 1001] shall be applicable in respect to such affidavits." [Emphasis added.]

I. The Indictment.

Appellant contends that the indictment failed to set out the essentials of the offense charged, that it failed to set forth with sufficient precision and clarity the manner in which the offenses were committed, and that it improperly charged six crimes where only three acts had taken place.

(a) *The absence of an allegation of materiality.* Appellant contends that the indictment failed to charge one of the essential elements of the crime in that it failed to charge that the false statements alleged to have been in the affidavits were "material." In Rolland v. United States, 5 Cir., 1953, 200 F.2d 678, a conviction under 18 U.S.C. § 1001 was reversed for

such a failure. Appellant concedes that the indictment did not have to use the word "material" but could have charged facts which would have indicated that the statements were material. However, appellant contends that the facts which would have indicated that the statements were material, and which were not alleged, were (1) that the statement was filed to secure compliance with Section 159(h), (2) that appellant was a union leader required to file, and (3) that he filed in order that his union might use the facilities of the National Labor Relations Board.

The Government contends that "materiality" is not an essential element of the crime of filing a false written document but that the term applies only to the first section of 18 U.S.C. § 1001 dealing with making a concealment of a material fact. United States v. Lange, D.C. S.D.N.Y.1955, 128 F.Supp. 797; United States v. Varano, D.C.M.D.Pa.1953, 113 F.Supp. 867. The language of Section 1001 seems to justify such a construction. However, even if an opposite construction is taken, appellant has not alleged that this defect in the indictment was prejudicial nor has he made any showing to this effect. Appellant knew the materiality of his statement. The statements ultimately proved were certainly material. If this is error, it is harmless error under F.R.Crim.P. 52(a), 18 U.S.C.

(b) *The charge of "affiliation".*

Appellant contends that the charge of "affiliation" in the Second, Fourth and Sixth Counts of the indictment, standing alone, is so vague as to give no fair or adequate notice of the offense charged. He contends that the Supreme Court in American Communications Association v. Douds, 1950, 339 U. S. 382, 412–413, 70 S.Ct. 674, 691, 94 L. Ed. 925 in construing Section 159(h)'s term "affiliated" to avoid unconstitutional vagueness in effect required: (1) the charge of affiliation to be defined so the defendant will be informed as to what conduct of his the Government considers affiliation, and (2) the charge that the defendant knew that such specified conduct constituted "affiliation." The indictment in this case did neither.

What the Supreme Court said in the Douds case concerning the term affiliated was as follows:

> "The argument as to vagueness stresses the breadth of such terms as 'affiliated,' 'supports' and 'illegal or unconstitutional methods.' There is little doubt that imagination can conjure hypothetical cases in which the meaning of these terms will be in nice question. The applicable standard, however, is not one of wholly consistent academic definition of abstract terms. It is, rather, the practical criterion of fair notice to those to whom the statute is directed. The particular context is all important.
>
> "The only criminal punishment specified is the application of § 35 (A) of the Criminal Code, 18 U.S.C. § 1001, 18 U.S.C.A. § 1001, which covers only those false statements made 'knowingly and willfully.' The question in any criminal prosecution involving a non-Communist affidavit must therefore be whether the affiant acted in good faith or knowingly lied concerning his affiliations, beliefs, support of organizations, etc. And since the constitutional vice in a vague or indefinite statute is the injustice to the accused in placing him on trial for an offense, the nature of which he is given no fair warning, the fact that punishment is restricted to acts done with knowledge that they contravene the statute makes this objection untenable. * * *"

There is no support for appellant's contention as to the proper contents of the indictment concerning the charge of affiliation in the language quoted, and there is no other language dealing with the question of affiliation in the Douds opinion.

Undoubtedly affiliate is not a precise term with neat boundaries. However, there is no requirement that the Government go further in the indictment.

(c) *The splitting of two acts into six crimes.*

Appellant contends that the indictment was defective in that it took his three acts of filing affidavits in 1951, 1952 and 1953, and made six crimes out of them. The indictment contained a count concerning appellant's statement that he was not a member of the Communist Party and his statement that he was not affiliated with that party for each of the three years. Section 1001 makes criminal the making of "any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry * * *." The crime denounced by section 1001 of title 18, read in the light of section 9(h) of the National Labor Relations Act, is the act of filing a false noncommunist affidavit with the National Labor Relations Board. United States v. Valenti, 3 Cir., 1953, 207 F. 2d 242, 244.

Appellant contends that the crime here was the filing of an affidavit with any false matter contained in it, and that each false statement contained in a particular affidavit did not create a new and different crime. He points out that he was charged with both membership and affiliation, relationships vis a vis the Communist Party incompatible with one another. He contends that this indicates that Congress did not intend more than one crime to attach to the filing of one affidavit no matter how many false statements are contained in it.

In a very recent decision, Bell v. United States, 1955, 349 U.S. 81, 75 S. Ct. 620, 622, 99 L.Ed. 905, the Supreme Court stated as follows:

> "When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."

Doubt should be resolved against turning a single transaction into a multiple offense.

However, appellant was only sentenced to five years on each count to run concurrently. The attack on splitting the cause of action would leave at least one good count for each of the three years. This alone does not justify reversal. See Kiyoshi Hirabayshi v. United States, 1943, 320 U.S. 81, 85, 105, 63 S.Ct. 1375, 87 L.Ed. 1774; Pinkerton v. United States, 1946, 328 U.S. 640, 641–642 note 1, 66 S.Ct. 1180, 90 L.Ed. 1489.

II. Exclusion and Admission of Evidence.

Appellant contends that the trial court erred in excluding certain items of evidence offered by him and in admitting certain items offered by the United States.

(a) *Admission of evidence.*

Appellant argues that the trial court improperly admitted testimony of one Harper, an FBI informant who had infiltrated the Communist Party, that he had seen appellant at a closed Communist Party meeting in 1949. Appellant contends that actions in 1949 are not probative on the issue of whether he was a member or affiliated with the Communist Party in 1951, 1952 and 1953. The Government contends that such evidence in connection with other testimony was probative to circumstantially prove appellant's guilt by showing (1) appellant was a Communist in 1949, (2) it was the policy of the Communist Party thereafter to have labor leaders withdraw and to impose security measures, and (3) appellant acted as a Communist during the critical period of 1951 to 1953. Such a theory of prosecution is permissible. See Haupt v. United States, 1947, 330 U.S. 631, 642, 67 S.Ct. 874, 91 L.Ed. 1145; Hupman v. United States, 6 Cir.,

1955, 219 F.2d 243, 248; Jencks v. United States, 5 Cir., 1955, 226 F.2d 540.

Appellant further urges that the trial court erred in allowing the following: Harper testified that he did not recall seeing appellant at a Communist Party meeting after 1949 and then asked if he could explain. The court allowed him to do so. Harper then stated "It is very possible that I have seen Mr. Fisher [the appellant] at other meetings * * *" but that he could not recall such meetings clearly. Appellant labels this as a guess rather than an opinion or a belief.

The United States replies to this by stating that the matter was one for the trial court's discretion and that such discretion was not abused here. See, e. g., United States v. Graham, 2 Cir., 1939, 102 F.2d 436, 441; United States v. Stoehr, D.C.M.D.Pa.1951, 100 F.Supp. 143, 154, affirmed, 3 Cir., 1952, 196 F.2d 276, 33 A.L.R.2d 836, certiorari denied, 1953, 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643. The discretion was not abused. The opinion of Harper properly went to the weight of the testimony, not its admissibility.

(b) *Exclusion of Evidence.*

Appellant sought the production of the records of the Federal Bureau of Investigation to show the receipts prepared by the F. B. I. which were signed by informer Harley Mores for himself and his wife Mazie Mores for moneys paid them by the F. B. I. from 1942 to 1953 amounting to $10,530, $5,780 being paid from 1950 to May 21, 1953.

Mores claimed this large sum was for his and his wife's *expenses* only. As he describes it, it was for money that he was "actually out". That is to say the informer claimed he and his informer wife were so devoted to the interests of justice that he advanced out of his own pocket all these expenses and that they devoted their time and energy for over eleven years in aiding the F. B. I. in its seeking for evidence for prosecutions, without any payment at all for the time they spent and energy they exercised for the benefit of the F. B. I.

It is obvious that if Mores and his wife were such extraordinarily devoted public servants their evidence would have a powerful effect on the jury. Without their evidence Fisher would not have been convicted. In this situation the production of the individual receipts was demanded.

Since if Mores' testimony were true they would have proved the claimed patriotic character of the long service of Mr. and Mrs. Mores, one would expect the Government to have been glad to produce the receipts. Instead it resisted the motion and the court sustained its opposition permitting only the admission of the annual totals. Here the court committed substantial error.

Appellant further argues that the trial court erred in not allowing him to call the United States Attorney trying the case as a witness to impeach the witness Harper. Appellant relies on a statement made by the United States Attorney in an argument on admission of evidence before the trial judge wherein he said that Harley Mores was the only witness "showing Mr. Fisher's implication in this case." Appellant hoped to impeach Harper by the testimony of the United States Attorney that Harper had told him before trial that he could not implicate appellant.

Appellant's quotation from the United States Attorney is taken out of context. He stated that *possibly* Mores was the only one who could implicate appellant, and so he wanted to be allowed to show Communist Party security measures to explain why no one else could do so. Harper only testified that he had seen appellant at a meeting in 1949 and that it was very possible that he had seen him later but that he was not sure. This was a proper exercise of discretion.

Finally appellant urges that the trial court erred in not allowing him to cross examine the witness Harper on his prior false identifications of Communists in

Security Board Hearings. The Government contends that all appellant wanted to do was show prior inconsistent statements, and then rely on the rule that a witness cannot be impeached by an inconsistent statement on a collateral matter. Shanahan v. Southern Pacific Co., 9 Cir., 1951, 188 F.2d 564.

However, appellant's theory was that Harper had been presented to the jury as an "expert" on Communism, Communist activity and on identification of Communists. He wanted to challenge Harper's expert standing and show bias in that Harper was paid to produce his testimony. Harper's testimony placing appellant at a closed meeting of the Communist Party in 1949 was a critical part of the Government's case. Great latitude in cross examination should be allowed. We hold the court erred in refusing it. See United States v. Augustine, 3 Cir., 1951, 189 F.2d 587, 590–591.

III. The Jury Instructions.

(a) *Application of the perjury corroboration rule.*

Appellant contends that the trial judge erred in failing to give an instruction that the testimony of one witness was insufficient to prove the falsity of the affidavits and that two witnesses or one witness plus independent corroboration were required to convict. The trial court instructed that the jury could find appellant guilty from circumstantial evidence. In short, appellant contends that the perjury corroboration rule should apply to prosecutions under 18 U.S.C. § 1001. See Weiler v. United States, 1942, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495; United States v. Arena, 9 Cir., 1955, 226 F.2d 227.

There are no cases directly in point. This court refused to apply the perjury corroboration rule to a prosecution under Section 1001 in Todorow v. United States, 9 Cir., 173 F.2d 439, certiorari denied, 1949, 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733. However, that was a case where the defendant was charged with causing another to make a false statement under 18 U.S.C. § 2. The falsity of the statement was not in issue. In Hupman v. United States, 6 Cir., 1955, 219 F.2d 243 the court allowed a conviction to stand where an instruction similar to the one given in this case was given. However, the Sixth Circuit failed to discuss the question of whether the perjury corroboration rule should be applied to a Section 1001 case.

Appellant relies on Hammer v. United States, 1926, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118, where the Supreme Court applied the corroboration rule to a prosecution for subornation of perjury.[1] The court stated at page 629 of 271 U.S., at page 605 of 46 S.Ct.:

> "The rule that the uncorroborated testimony of one witness is not enough to establish falsity applies in subornation as well as in perjury cases. * * * Falsity is as essential in one as in the other. It is the *corpus delicti* in both."

Appellant argues that here and in perjury cases "falsity is as essential in one as in the other." He further contends that the reason behind the rule stated in the Weiler case by the Supreme Court is as applicable to Section 1001 prosecutions as to perjury cases. The corroboration rule is a protection against unfounded prosecutions, and "implicit in its evolution and continued vitality has been the fear that innocent witnesses might be unduly harassed or convicted in perjury prosecutions if a less stringent rule were adopted." Weiler v. United States, supra, 323 U.S. at page 609, 65 S.Ct. at page 550.

The United States quotes an earlier paragraph in the Weiler opinion which indicates that the policies are not the same in regard to corroboration.

> "*Lawsuits frequently engender in defeated litigants sharp resentments and hostilities against adverse witnesses*, and it is argued, not without persuasiveness, that rules of law must be so fashioned as to protect

1. This circuit has also so held, Catrino v. United States, 1949, 176 F.2d 884, 888.

honest witnesses from hasty and spiteful retaliation in the form of unfound perjury prosecutions." [Emphasis added.]

The corroboration rule has been greatly criticized on the ground that it is inconsistent to rule that evidence sufficient to warrant the death penalty for murder is insufficient to convict a man of perjury. See, e. g., 7 Wigmore on Evidence §§ 2040–2041 (3d ed. 1940). This circuit has narrowed the rule in perjury cases to require only evidence of corroboration which convinces the jury that the main witness is telling the truth.

The question is a close one, but the reasons behind the perjury rule do not seem applicable. The trial court did not err.

(b) *The precautionary instruction on secret informers.*

Appellant argues that the trial court erred in not giving an adequate instruction warning the jury about the testimony of paid informers. The trial court gave the following instruction:

"The evidence shows that certain of plaintiff's witnesses were in times past engaged by the government to join the Communist Party and make reports to the Federal Bureau of Investigation of such facts as they learned during such association; also that they were paid considerable sums of money while so engaged. *In weighing the testimony of such witnesses in this case you should scrutinize their testimony with care and caution* and after so considering their testimony give it just such weight as you believe it to be entitled to in view of all the circumstances of the case as disclosed by the evidence. If you find they have testified truthfully such testimony is as good as the truth testified to from any other source." [Emphasis added.]

We think the instruction adequate on the testimony of Mores that the moneys paid him were for expenses only. However, the instruction does not cure the denial of the production of the receipts which well may have shown that Mr. and Mrs. Mores were paid money *for their long service* in procuring evidence. In that event the instruction should have stated that they had been "paid considerable sums of money while so engaged" but that they also were paid for their services for spying on Fisher. As stated in 3 Wigmore on Evidence, § 969:

"One who as a *spy* obtains information of a crime is not necessarily open to discredit thereby; but one who for that purpose * * * has worked for hire in his investigations * * * may under the circumstances be open to the suspicion of bias or interest." See also, Harris v. United States, 1948, 83 U.S. App.D.C. 348, 169 F.2d 887; Steem-Electric Corporation v. Herzfeld-Phillipson Co., 7 Cir., 1940, 118 F.2d 122; Hostetter Co. v. Bower, C.C. N.Y.1896, 74 F. 235.

(c) *The definition of membership and affiliation.*

The trial court gave the following instruction defining "membership" and "affiliation" to the jury as those terms are used in 29 U.S.C.A. § 159(h):

"As used in the indictment and statute the words 'member' and 'affiliated' when applied to the Communist Party have no unusual or different meaning apart from their normal or common usage.

"Webster's New International Dictionary defines 'member' as follows:

" 'One of the persons composing a society, community, or party; an individual who belongs to an association."

" 'Affiliate' is defined as follows:

" 'To connect or associate one's self with; to adopt, hence usually to bring or receive into close connection; to ally.' "

The appellant contends that both parts of the instruction are erroneous. His proposed instruction stated the formal requirements for *membership* in the

Communist Party, applying and being accepted, accepting the principles of the Party, acting for the Party and paying dues and attending Party meetings.

Membership is composed of a desire on the part of the person in question to belong to an organization and acceptance by the organization. Moreover, certain actions are usually required such as paying dues, attending meetings and doing some of the work of the group. These were the factors mentioned in the Supreme Court's opinion in Galvan v. Press, 1954, 347 U.S. 522, 528–529, 74 S.Ct. 737, 98 L.Ed. 911, where the court considered whether the evidence justified the conclusion that a certain person was a member of the Communist Party. Congress in the Communist Control Act of 1954 indicates thirteen types of evidence which a jury may consider to determine the question of membership. 50 U.S.C.A. § 844. Analyzed carefully they break down into acts of the individual indicating a desire to belong, acts of acceptance by the organization, and various contributions of funds or services to the organization.[2]

The dictionary definition read to the jury by the trial court defined "membership" in terms of its synonyms rather than breaking it down into its component elements. The issue thus is whether this is error. The Government contends that "membership in an organization is one of the most common and frequently exercised privileges of an American citizen, and it is doubtful if there is any juror who does not understand the acts which constitute membership in an organization." Under 29 U.S.C.A. § 159(h) and 18 U.S.C. § 1001, "punishment is restricted to acts done with knowledge that they contravene the statute" and "no honest, untainted interpretation * * * is punishable". American Communications Association v. Douds, 1950, 339 U.S. 382, 413, 70 S.Ct. 674, 691, 94 L.Ed. 925. Appellant contends that he might honestly state he was not a member if he had failed to comply with any of the Party's formal requirements for membership as stated in its Constitution. The Government does not answer this contention in their brief. The jury should have been reminded of the components of the term membership rather than be supplied with synonyms. The instruction was erroneous.

Appellant also contends that the instruction concerning affiliation was too vague. The trial court defined it as follows: "To connect or associate one's self with; to adopt, hence usually to bring or receive into close connection; to ally." The Supreme Court considered the meaning of the phrase "affiliated with the Communist Party" at some length in Bridges v. Wixon, 1945, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103. The Court quoted with approval the following from United States ex rel. Kettunen v. Reimer, 2 Cir., 1935, 79 F.2d 315, 317:

> " 'Affiliation includes an element of dependability upon which the organization can rely which, though not equivalent to membership duty, does rest upon a course of conduct that could not be abruptly ended without giving at least reasonable cause for the charge of a breach of good faith.' "

The Court itself stated:

> "[Affiliation] * * * imports * * * less than membership but more than sympathy. * * *

2. It should be recognized that both the opinion of the United States Supreme Court in Galvan v. Press, 1954, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911, and the Communist Control Act of 1954, 50 U.S.C.A. § 844, were handed down and enacted several years after the passage of Section 9(h) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 159 (h), and neither deals directly with the question of the proper instruction to a jury in a prosecution for filing a false non-Communist affidavit. However, they are indications of what the Supreme Court and the Congress believe to be the components of the often used phrase "member of the Communist Party".

Whether intermittent or repeated the act or acts tending to prove 'affiliation' must be of that quality which indicates an adherence to or a furtherance of the purposes or objectives of the proscribed organization as distinguished from mere cooperation with it in lawful activities. The act or acts must evidence a working alliance to bring the program to fruition."

The question is whether the definition given by the trial judge was sufficient to get across to the jury the idea of a continuing reciprocal relationship involving duties and responsibilities. The proper test to apply is whether one could be convicted under the instruction which was given who was only in sympathy with the aims of the Communist Party, and who occasionally would, say, distribute literature for it but without any obligation to do so or to continue to do so. He would have connected or associated himself with the Communist Party. He would be its ally. One who was in sympathy with the aims of the Communist Party might be an undesirable person to have as a labor leader since he might agree to call a political strike to further that Party's revolutionary ends. However, under the test of affiliation laid down in Bridges v. Wixon he could honestly answer that he was not affiliated with the Communist Party. If the test of affiliation given in that case is still applicable, and unless the Government can distinguish the case, this instruction is erroneous.

IV. The Evidence.

Appellant contends that his conviction was not justified by the evidence. The evidence taken most strongly for the Government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, is as follows: Appellant attended an important meeting of Communist Party leaders in 1949 which was closed to non-members. Both the witnesses Mores and Harper testified to this. Appellant collected Mores' party dues in September of 1950 and asked him what the Party policy on Section 159(h) affidavits was. He was not seen in Party circles from 1950 to 1952. However, during this time the Communist Party policy was that labor leaders subject to such affidavits could destroy Party cards and neither attend meetings nor pay dues. Local groups were to destroy lists with the names of union leaders on them. Only two or three people knew which union leaders were Communists. Mores testified that in 1952 he met appellant at a meeting where it was announced that appellant was the new organizer for a certain district and in charge of collecting dues. At a later meeting appellant gave Mores literature and a reading list of Communist documents. Mores saw appellant at two later meetings wherein appellant played a significant role as a leader.

Thus the Government's case was that appellant was a member of the Communist Party or affiliated therewith both before and after 1951 and 1952, the years in which he executed and filed non-Communist affidavits. (Appellant was acquitted on the counts concerning 1953. During those two years it was Communist Party policy for union leaders to drop their overt connections with the Party. The case circumstantially proves membership or at least affiliation at the time the affidavits were executed since the jury was free to draw the obvious inference that appellant continued his Party connections.

Appellant points to discrepancies in the testimony of Mores. Mores on cross examination was not a good witness, often answering "I don't know" and evading questions. However, this is a question of credibility for the jury. Mores' knowledge that the meetings were closed to all but Communists was attacked as hearsay but appellant's brief does not spell out why or how his knowledge was hearsay. The record does not supply this gap. Mores and Harper placed the 1949 meeting a year apart, one stating it was in December of 1949, the other in January of 1949. However, the jury was free to accept the obvious explanation of the common mistake about

the year in which something occurred when the transaction took place in either December or the following January. We think the evidence sustains the verdict.

Because of the errors in excluding evidence and in the instructions the judgment is reversed.