Maurice E. TRAVIS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 5379.

United States Court of Appeals
Tenth Circuit.

July 15, 1957.

Rehearing Denied Aug. 27, 1957.

Nathan Witt, New York City (Montfort, Wilson & Deikman, Eugene Deikman and Charles D. Montfort, Denver, Colo., were with him on the brief), for appellant.

Thomas Mitchell and Donald E. Kelley, U. S. Atty., Denver, Colo. (Harold D. Koffsky, Carl G. Coben and Cyril S. Wofsy, Attys., Dept. of Justice, Washington, D. C., were with them on the brief), for appellee.

Before PHILLIPS, MURRAH and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

The defendant was indicted in the United States District Court for the District of Colorado upon six counts alleging violation of the false statement statute, 18 U.S.C. § 1001.[1] The Government dismissed two counts before trial and defendant was found guilty upon each of the remaining counts. The basis of defendant's conviction lies in the falsity of two "Affidavits of Non-Communist Union Officer" in which he swore he was "not a member of the Communist Party or affiliated with such party." Each of the affidavits were executed by defendant in Denver, Colorado, and mailed from Denver to the National Labor Relations Board in Washington, D. C., where they were received and filed pursuant to 29

1. "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

U.S.C.A. § 159(h).[2] Defendant was an officer of the International Union of Mine, Mill and Smelter Workers and it is agreed that the making and filing of the affidavits is a matter within the jurisdiction of an agency of the United States and that during the life of the affidavits Mine-Mill was in compliance with sections 9(f), (g) and (h) of the Labor Management Relations Act of 1947 and used the facilities of the N.L.R.B.

Upon conviction defendant was sentenced to imprisonment for four years on each of two counts, to run concurrently, and for four years on each of the other counts, to run concurrently, a total of eight years. Fines totalling $8,000 were also imposed.

Defendant on appeal does not challenge the sufficiency of the evidence to support conviction but seeks reversal upon claim of lack of jurisdiction in the Colorado court and numerous assertions of errors occurring during trial.

Since we conclude that a new trial must be granted we limit our consideration to matters requiring reversal and those contentions of appellant which will necessarily recur on retrial.

Travis did not testify at the trial and as a consequence his contemporary credibility was not at issue. He did, however, call as character witnesses four persons each of whom stated that Travis's general reputation for truth and veracity was good. Upon cross examination, over objection, the trial court allowed the credibility of the character witnesses to be tested by inquiry as to whether or not the witnesses had heard: (1) that Travis had been convicted of criminal contempt of court in Grant County, New Mexico, and (2) that when Travis had been asked before the McCarren Committee of the United States Senate in Salt Lake City in October, 1952, if he was at that time a member of the Communist Party, he had refused to answer on the ground that it would incriminate him.

Before overruling objection to the questions the trial court very properly made inquiry as to the factual background of the assumptions contained in the questions. Both occurrences were admitted by Travis to be actualities, the criminal contempt conviction arising as a result of a labor dispute.

■■ In Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 220, 93 L.Ed. 168, it is said, "The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." In attempting to prove a good reputation for truth and veracity Travis placed in issue those characteristics determinative of his capability of the commission of the crime charged—false swearing in a labor matter. Since lack of veracity is the very essence of the indictment of Travis an attempt by him to negative the existence in him of those traits existent in one guilty of such an offense places in issue all characteristics affecting reputation which explore the crime itself and the ability of the accused to commit the crime. So viewed, inquiry from the witness as to his knowledge of Travis's conviction for criminal contempt is relevant and as Michelson holds, inquiry is proper although "the crimes may be unlike, but both alike

---

2. "No investigation shall be made by the Board of any question affecting commerce concerning the representation of employees * * * and no complaint shall be issued pursuant to a charge made by a labor organization * * * unless there is on file with the Board an affidavit executed * * * by each officer of such labor organization * * * that he is not a member of the Communist Party or affiliated with such party, and that he does not believe in, and is not a member of or supports any organization that believes in or teaches, the overthrow of the United States Government by force or by any illegal or unconstitutional methods * * *."

Travis was a national officer of Mine-Mill and was required by regulation and instruction of the N. L. R. B. to file with that Board in Washington.

proceed from the same defects of character which the witnesses said this defendant was reputed not to exhibit." Those defects of character which would lead one to disregard the lawful order of the court in a labor dispute may well be the same defects which might lead one to falsely swear to the affidavits upon which the instant prosecution is based. See Hawley v. United States, 10 Cir., 133 F. 2d 966.

■ But the reasoning of Michelson clearly negatives the relevancy of examination relative to Travis's claim of constitutional privilege before the McCarren Committee. One who claims the rights and privileges of the Constitution most certainly does not exhibit a character defect of any kind and, if one who lawfully asserts the shelter of the Fifth Amendment becomes, in so doing, a person of guilt or a perjurer in the minds of some, the shame lies with those who misunderstand and not with him who is entitled to protection. Cross examination probing the witnesses' knowledge of Travis's claim of constitutional immunity during the McCarren hearing had, we believe, no proper probative value but if such existed it was, as stated by Mr. Justice Harlan in Grunewald v. United States, 77 S.Ct. 963, 982, "far outweighed by its possible impermissible impact on the jury," had "grave constitutional overtones," and was fraught with "the danger that the jury made impermissible use of the testimony by implicitly equating the plea of the Fifth Amendment with guilt * * *." The admission of this evidence necessitates a new trial. Grunewald v. United States, supra; Curcio v. United States, 77 S.Ct. 1145.

■ But appellant insists that the action should be dismissed in its entirety for lack of venue jurisdiction in Colorado. As noted, it is unquestioned that Travis executed and mailed the affidavits at Denver, Colorado. It is appellant's view that his "making and using" the false document was completed in Colorado, prior to the time when such activities became "a matter within the jurisdiction of any department or agency of the United States" and hence a federal crime. For this reason, he maintains that 18 U.S.C. § 3237, known as the continuing offense statute, which provides that any offense against the United States begun in one district and completed in another, or committed in more than one district, may be prosecuted in any district in which the offense was begun, continued, or completed, does not apply. He neglects, however, to point out any possible use to which such a false affidavit might be put other than as a filing with the N.L.R.B. in Washington, which was his intent and his consummated purpose.

In the case of United States v. Valenti, 3 Cir., 207 F.2d 242, the Third Circuit held that the act denounced by Section 1001 is the filing of a false noncommunist affidavit with the Board and that no crime is committed until the affidavit, through its filing, has become the basis for action by the Board. Also, although the concurring opinion suggests that the case is based upon a failure of proof of mailing, the majority clearly holds that constructive filing by deposit in the mails is not sufficient to lay venue at the place of deposit. The court's rejection of the government's contention that the continuing offense statute should apply claims support in language of United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897. In the Lombardo case, the crime committed was a failure to file a required statement with a government agency and the Supreme Court understandably held that the accused could not be prosecuted at the place of his residence on the theory that the failure to deposit the statement in the mail is the beginning of a continuing offense. The distinction between a situation where the accused fails to file and one where he makes a false affidavit with the intent to file it with the Board and entrusts it to an irrevocable agency for that purpose is clear.

While we recognize the important issues of public policy involved in the setting of venue and the necessity of maintaining a taut rein against possible abus-

**134**

es by the prosecution and hardship to the defendant in a trial far from his abode, United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236, it appears that such considerations are not present here and that this situation is precisely the one which Congress intended to reach by the continuing offense statute. This statute was applied in connection with Section 1001 in De Rosier v. United States, 5 Cir., 218 F.2d 420, 422, the court stating:

" * * * When the letter containing the false statements and the fabricated document was prepared and forwarded to the Loyalty Board, there was set in motion the events which culminated in the commission of the offenses charged. It would be an excess of literalism to say that the appellant was only preparing to commit the offense, and that the actual commission thereof had not in fact begun at the time and place from which the letter was sent, mailed, or forwarded, to the Board. It is no answer to say that, by some fortuitous circumstance, the consummation of the crime might have been frustrated by the loss of the letter in transit, thereby rendering ineffectual the attempt to deliver the false statements. Necessarily, the commission of the offense must be viewed in retrospect. It is often not easy to draw a line between attempt and preparation; the former is such an intentional preparatory act as will apparently result, if not extrinsically prevented, in a crime which it was designed to effect."

The facts of this case parallel those of the De Rosier case. 18 U.S.C. § 3237 permits prosecution in any district where the offense was begun, continued, or completed and, therefore, venue was properly laid in the District of Colorado.

 Appellant next contends that the indictment was fatally defective as duplicitous and in fact repugnant in its charge. Counts 1 and 2 of the indictment charged respectively that appellant filed a "false writing" with a government agency stating that he was not "then and there a member of the Communist Party" and that he was not "then and there affiliated with the Communist Party" on December 19, 1951. Counts 4 and 5 charged the same respectively as to December 3, 1952. Since, appellant argues, membership and affiliation are different statuses no person could hold both at the same time (repugnancy) and since, so says appellant, membership necessarily includes affiliation he is twice charged with the same offense. The obvious answer to appellant's contention lies in the false premise of his argument. He is not charged with being a Communist nor with being affiliated with the Communist Party, but rather with having falsely represented that he held neither of these statuses.[3] Various means used in committing the offense charged may be joined without duplicity. Silkworth v. United States, 2 Cir., 10 F.2d 711. "Duplicity" in an indictment generally means the charging of two or more separate and distinct offenses in one count, not the charging of a single offense into which several related acts enter as ways and means of accomplishing the purpose. Frankfort Distilleries v. United States, 10 Cir., 144 F.2d 824, reversed on other grounds, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 564. And, where a statute creates a single offense, but specifies in the alternative different acts, any one of which will constitute the offense, an indictment may charge the commission of such offense by all the means mentioned, using the conjunctive "and" wherever the statute uses the word "or," without being duplicitous. United States v. Dembowski, D.C.Mich., 252 F. 894. His objections to the indictment must also fail if the indictment charges two offenses because

---

**3.** The Ninth Circuit has held that an accumulative sentence may not be levied for separate counts alleging false denials of membership and affiliation, Fish-er v. United States, 231 F.2d 99. Since we are granting a new trial we consider this question presently premature.

" * * * a draftsman of an indictment may charge crime in a variety of forms to avoid fatal variance of the evidence. He may cast the indictment in several counts whether the body of facts upon which the indictment is based gives rise to only one criminal offense or to more than one. To be sure, the defendant may call upon the prosecutor to elect or, by asking for a bill of particulars, to render the various counts more specific. In any event, by an indictment of multiple counts the prosecutor gives the necessary notice and does not do the less so because at the conclusion of the Government's case the defendant may insist that all the counts are merely variants of a single offense." United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 231, 97 L.Ed. 260.

Finally appellant complains of the court's instructions particularly as they define membership and affiliation. The trial court instructed:

"Membership in the Communist Party is the state or status of being one of those persons who belong to or compose that Party. Not every relationship between an individual and an organization constitutes membership. An individual may be sympathetic or agree with all or part of the program of an organization and still not be a member. Isolated acts of the defendant showing cooperation with the Communist Party or isolated statements of the defendant showing sympathy with Communist Party or with its aims or policies are not conclusive evidence of membership but are circumstances which you may take into consideration along with all the other evidence in the case.

"The word 'affiliated', as used in the second and fifth counts of the indictment, means a relationship short of and less than membership in the Communist Party, but more than that of mere sympathy for the aims and objectives of the Communist Party.

"A person may be found to be 'affiliated' with an organization, even though not a member, when there is shown to be a close working alliance or association between him and the organization, together with a mutual understanding or recognition that the organization can rely and depend upon him to cooperate with it, and to work for its benefit, for an indefinite period upon a fairly permanent basis.

"Affiliation includes an element of dependability upon which the organization can rely which, though not equivalent to membership duty, does rest upon a course of conduct that could not be abruptly ended without giving a reasonable cause for the charge of a breach of good faith.

"Whether or not the defendant was affiliated with the Communist Party at the time alleged in the indictment is a question of fact which you ladies and gentlemen are to determine from all the evidence in the case."

We believe the court's instructions on the meaning of affiliation to be proper. However in Jencks v. United States, 77 S.Ct. 1007, Mr. Justice Burton criticized an instruction as to what constitutes membership, pointing out that the instruction failed to emphasize that the primary essential of membership is the desire of the individual to belong to the group and the recognition by the organization that it considers him as a member, and cited with approval Fisher v. United States, 231 F.2d 99, 106–107. That case held that the jury should have been reminded of the components of the term membership rather than be supplied with synonyms. Under the Communist Control Act, Congress has outlined fourteen indications of membership which the jury shall consider, upon the presentation of such evidence, in determining whether the accused is a member of the Communist Party, 50 U.S.C.A. § 844. Certainly these indicia of member-

ship may be shown through circumstantial evidence, as any other fact, but the facts thus established must show more than cooperation or sympathy with the Party's policies, which would be equally persuasive of mere affiliation. The instruction should be made more explicit upon the new trial.

Reversed and remanded for new trial.

MURRAH, Circuit Judge (concurring specially).

I concur in the opinion of the court with one exception. I also think it was improper and prejudicial to allow the government to inquire of the character witness concerning the defendant's prior commitment as for contempt of court. Certainly one may "be committed as for contempt upon facts which would have no bearing upon his honesty or integrity * * *." State v. Sexsmith, 186 Wash. 345, 57 P.2d 1249, 1252. There was nothing in the content of the question to indicate that the defendant's conviction for contempt of court bore any relationship whatsoever to his truth and veracity—the trait of character in issue.