**Newell Chilton SELLS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 5992.**

United States Court of Appeals
Tenth Circuit.
Dec. 30, 1958.

Rehearing Denied Jan. 14, 1959.

Eugene Deikman, Denver, Colo., for appellant.

Anthony A. Ambrosio, Atty., Dept. of Justice, Brooklyn, N. Y. (Donald E. Kelley, U. S. Atty. for Dist. of Colorado, Denver, Colo., Bruno A. Ristau, Washington, D. C., and Paul C. Vincent, Attys., Dept. of Justice, New York City, were with him on the brief), for appellee.

Before BRATTON, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Sells was charged with making and using a false "Affidavit of Noncommunist Union Officer" in violation of the false statement statute.[1] The jury found him guilty under each of the two counts of the indictment and he was sentenced to a term of two years' imprisonment under each count, the sentences to run concurrently. Also, he was adjudged guilty of contempt of court for failure to answer certain questions when he testified in his own behalf and for this offense he was sentenced to thirty days. The contempt sentence was to run consecutively with the indictment sentences. He appeals from each conviction.

Section 9(h) of the National Labor Relations Act, as amended,[2] provides that the National Labor Relations Board[3] shall make no investigation and issue no complaint on behalf of a union unless there is on file with the Board an affidavit of each officer of the union and of any national or international labor organization of which the union is an affiliate that he is not a member of or affiliated with the Communist Party. It is further provided that "The provisions of section 35A of the Criminal Code shall be applicable in respect to such affidavits." Under the 1948 revision of the Criminal Code, the applicable provision of former § 35A is now found in 18 U.S.C. § 1001.[4] The only sanction contained in § 9(h) is that of prosecution for making a false statement.[5]

Each count of the indictment concerns an affidavit made, used and filed with the Board at its Denver, Colorado, office on or about August 12, 1952. The false statement alleged in the first count is that he, Sells, was not a member of the Communist Party, and in the second count it is that he was not affiliated with the Communist Party whereas in each instance the facts were to the contrary. Thus each count accuses Sells of a differ-

---

1. 18 U.S.C. § 1001.

2. 29 U.S.C.A. § 159(h).

3. Hereinafter referred to as Board.

4. "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

5. Leedom v. International Union of Mine, Mill and Smelter Workers, 352 U.S. 145, 148, 77 S.Ct. 154, 1 L.Ed.2d 201.

ent false statement but both statements were made in the same affidavit.

Many of the facts upon which the government relies are not contradicted. Sells admittedly joined the Communist Party in Texas during the year 1948 and was active in Party meetings and enterprises in that state until he moved to Colorado in 1950. His participation in Party affairs continued and at least until about May, 1952, he attended local, organizational and educational meetings of the Communist Party and was a delegate to its 1950 Colorado state convention. He was chairman of the student group of the Communist Party in Boulder. At the request of the Party he sought industrial employment so that he could become active in labor unions but had difficulty in securing such employment because of his physical condition. In the early part of 1952 he started working for an air cleaner service company in Denver and became a member of Amalgamated Local No. 186, UAW-CIO, an affiliate of the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America. Soon he became a steward of this unit and served in various capacities as a representative of the union. Sometime in the spring of 1952 he was elected recording secretary of the local union but he did not take office until the union meeting held on the first Thursday of August, 1952.

Sells received from the president of the local union NLRB form 1081, "Affidavit of Noncommunist Union Officer," signed it before a notary public on June 3, 1952, and returned it to the union president who filed it with the Denver Board office.[6] In two statements given by Sells to agents of the Federal Bureau of Investigation he related, in substance, that after he was aware of his possible election to union office he discussed the matter with Denver members of the Communist Party and it was agreed by him and them that he should take the office, should discontinue open Communist Party activities, and should keep in touch with the Party through an arranged contact. In his testimony at the trial Sells asserted that he left the Party prior to his election to union office and remained out of the Party until after he resigned that union office about December, 1953. He thereafter continued his active participation in Communist Party matters until he left the Party in 1955. Since then he has not been a member or an affiliate.

■ Asserting that the evidence was insufficient to sustain the verdict, counsel for Sells first urges that the materiality of the false statements was not established because there was no substantial evidence that Sells was a union officer and because it was not shown that the union was in compliance with the act or availed itself of the facilities of the Board. While the government contends that the allegation of materiality is surplusage,[7] we deem it unnecessary to determine the point and merely note that there is a conflict in the decisions.[8] In the instant case the record establishes materiality.

The status of Sells as a union officer is clear. In his affidavit Sells swore that he was "a responsible officer of the union." As said in Hupman v. United States, 6 Cir., 219 F.2d 243, 249, certiorari denied 349 U.S. 953, 75 S.Ct. 882, 99 L.Ed. 1278, "he can not now complain, if the jury took him at his word." If the test of identification of the office in the constitution of the union, as adopted by the Board and approved in National La-

---

6. The file stamp shows that the affidavit was received on August 12, 1952.

7. The argument is that while § 1001 requires materiality in its concealment provision it does not do so when referring to a false writing or document and that the express statement of § 9(h) as to the applicability of § 1001 is a congressional declaration of materiality.

8. The Second Circuit has held that materiality need not be charged. United States v. Silver, 2 Cir., 235 F.2d 375, 377, certiorari denied 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed.2d 80. The fifth Circuit has held to the contrary. Rolland v. United States, 5 Cir., 200 F.2d 678, 679-680, certiorari denied 345 U.S. 964, 73 S.Ct. 950, 97 L.Ed. 1383.

bor Relations Board v. Coca-Cola Bottling Co., 350 U.S. 264, 269, 76 S.Ct. 383, 100 L.Ed. 285, is applied, the necessary proof is supplied by the "Certificate of Union Officers" signed by the union president, filed with the Board, and received in evidence. The instructions on the reverse of this form direct the insertion in the space provided of "the exact title of each officer listed in your constitution and bylaws." The form as filed names the office of "Recording Sec'ty." Sells admittedly assumed that office and performed its duties. While the date of taking office is not entirely clear from the evidence, in no event was it later than the first Thursday in August, 1952, and hence preceded the August 12, 1952, filing of Sells' affidavit with the Board.

Compliance by the union with the act is urged as a prerequisite to materiality. Proof of such status is said to require evidence that the local and its parent organization have made the filings required by § 9(f), (g), and (h). If this is necessary, the requirement was satisfied by the testimony of the officer in charge of the Denver office of the Board who, after the filing of the Sells affidavit and the aforementioned Certificate of Union Officers, wrote the local union that it would be considered in compliance until December 31, 1952, provided there were no intervening changes in officers and provided the parent union was in continuous compliance. No independent showing of the filings required by § 9(f) and (g) was necessary. The officer testified that the usual proof of such filings

with the Secretary of Labor had been made and there was no evidence to the contrary.

■ Materiality is not dependent upon the use of the Board facilities by the union. The test is not use but right to use. The filing of the noncommunist affidavits is "the key that makes available to the union the benefits of the Act." [9] These benefits are of the utmost importance to labor unions.[10] The attainment of the right to these benefits by a false statement establishes beyond question the materiality of that false statement.

The sufficiency of the evidence is attacked on the ground that there was no substantial evidence of membership in or affiliation with the Communist Party on the critical date. This point was resolved against the defendant by the jury and its verdict must be sustained if, taking the view most favorable to the government, there is substantial evidence to support it.[11] Admittedly Sells was an active member of the Communist Party before taking union office and after leaving that office. However, he testified that he was neither a member nor an affiliate while he was a union officer.

Sells gave two written statements to agents of the Federal Bureau of Investigation.[12] In these Sells related the arrangements which he made with his Communist Party associates prior to his election to union office and his participation in Communist Party activities while he held such office.[13]

---

9. Leedom v. International Union, supra, 352 U.S. at page 148, 77 S.Ct. at page 156.

10. United States v. Pezzati, D.C., 160 F. Supp. 787, 790. Cf. American Communications Association, C. I. O. v. Douds, 339 U.S. 382, 390, 70 S.Ct. 674, 94 L.Ed. 925.

11. Corbin v. United States, 10 Cir., 253 F.2d 646, 648, and authorities cited in Note 7.

12. Each was read, corrected and signed by Sells and each page of each statement was initialed by him.

13. In his first statement Sells said:
"At the time I realized I was going to be nominated to be Secretary of the Union Local I discussed this situation with my Communist Party associates and we mutually agreed that I should discontinue any open Communist Party activities at that time. I stopped paying Communist Party dues at that time. When I became Secretary of the Local, I signed a non-Communist affidavit in accordance with the Taft-Hartley law.
"During the time I was Secretary of this Local, I maintained contact with the Communist Party through a man known to me by the name of Howard Sim-

Two government witnesses, Duran and Fortson, joined the Communist Party at the behest of, and gave information to, the Federal Bureau of Investigation. In substance, their testimony established that Sells was a devoted and dedicated member of the Communist Party during the period when they knew him. Duran's testimony as to Sells' Communist activities covered the period from November, 1950, to July 27, 1952, and Fortson's testimony the period from December, 1950, to December, 1951. While Sells vigorously denied the statements of Duran that he, Sells, attended a secret meeting of Communist Party leaders near Sedalia, Colorado, on July 27, 1952, this merely raised a question of credibility to be resolved by the jury.[14]

Invoking the familiar rule that a conviction cannot be had when the corpus delicti of an offense is proved solely by the unsupported extrajudicial statements of the accused,[15] counsel urges that this prosecution must fail because the only proof of the corpus delicti is that contained in the defendant's extrajudicial statements. As there was independent proof of the making and using of the affidavit, the point can only relate to the truth or falsity of the denials of membership or affiliation.

■ It is not necessary that the evidence corroborating an extrajudicial confession be sufficient to establish, independently of the confession, the corpus delicti but it is required that the government produce independent evidence sufficiently supporting the essential admitted facts to justify a jury inference of the truth of the admitted facts.[16] Here the "independent evidence tending to establish the trustworthiness" of the defendant's statements showed the desire of the defendant to belong to the Communist Party and the recognition by that organization of him as a member over a period which ran up to about two weeks before the filing of the affidavit. It proved a continuing course of conduct which gave credence to the extrajudicial confessions. The rule as laid down in the Opper and Smith cases was fully satisfied.

■ Counsel insists that in any event there is no evidence of membership or affiliation on the date of the filing of the affidavit and that the presumption of continued status must yield to the presumption of innocence. But in this case the presumption of continued status is aided not only by the extrajudicial statements of the defendant but also by the testimony which he gave from the witness stand. Sells, as a witness at the trial, admitted Communist Party membership both before and after the affidavit episode. Sells, in his statements to the government agents, related the arrangements made with his Communist associates for him, during his period of union office, to "discontinue any open Communist Party activities" and yet to maintain contact with the Party. If all that is needed to defeat a prosecution such as this is a showing that the accused

---

mons. He contacted me approximately once a month."

In his second statement Sells gave more detail and related meetings with Simmons and other Communists while he was a union officer.

14. Counsel for Sells stresses the omission in the F. B. I. statements of any reference to the Sedalia meeting and says that such omission destroys the credibility of Duran. The conclusion is unjustified. The F. B. I. statements contain no denial by Sells of participation in the Sedalia meeting. One government agent testified that Sells told him that he, Sells, attended a meeting of the Communist Party in the vicinity of Sedalia, Colorado, during the summer of 1952.

15. Opper v. United States, 348 U.S. 84, 89 et seq., 75 S.Ct. 158, 99 L.Ed. 101; Smith v. United States, 348 U.S. 147, 156, 75 S.Ct. 194, 99 L.Ed. 192; Kelly v. United States, 10 Cir., 246 F.2d 864, 865; Braswell v. United States, 10 Cir., 224 F.2d 706, 711, certiorari denied 350 U.S. 845, 76 S.Ct. 86, 100 L.Ed. 752; Oldstein v. United States, 10 Cir., 99 F. 2d 305.

16. See discussion of Opper v. United States and Smith v. United States in Braswell v. United States, supra.

changed his status at the critical point from the status which existed before and after, then the provisions of § 9(h) are emasculated and the congressional intent summarized in American Communications Association v. Douds, supra, is nullified. We conclude that the evidence is sufficient to support the verdict of the jury.

■ The indictment charges the commission of the offense on or about August 12, 1952. The proof shows that the affidavit was signed before a notary public on June 3, 1952. Defendant contends that this amounts to a fatal variance between indictment and proof. However, the crucial act was the filing of the affidavit with the Board on August 12, 1952. Until the affidavit was filed it was not a matter within the jurisdiction of the Board.[17] The pertinent provisions of § 1001 apply to one who "makes or uses" a false writing. Here the use was the filing with the undenied acquiescence of the defendant. There was no variance.

■ Error is alleged to have resulted from the reception in evidence of remote, irrelevant, prejudicial and inflammatory evidence and from the comment on such evidence by the prosecutor in his argument to the jury. The challenged evidence related to statements and activities of the defendant and of other members of the Communist Party with whom he associated and cooperated. The evidence was admissible to show that defendant was a member of the Communist Party when the affidavit was filed with the Board. It was necessary to corroborate the extrajudicial admissions of the defendant. Proof that the defendant accepted communist teachings is no more inflammatory than proof that he was a communist. Certain types of crimes excite emotions. Evidence tending to prove the commission of such crimes is not objectionable because it excites emotions. In this case there was no "effort to unduly pyramid evidence for the deliberate purpose of unfair emphasis or to incite the passion or prejudice of the jury."[18] As the evidence was admissible, calm review and fair comment were permissible in argument. A careful reading of the prosecutor's arguments shows that they are not subject to the criticisms made in Bary v. United States, 10 Cir., 248 F.2d 201, 213. Reasonable latitude in argument is permissible.[19] The closing argument was a restrained reply to the highly provocative argument of defense counsel.[20] The challenged argument was temperate rather than inflammatory. It could not have unfairly or unduly influenced the jury.[21]

■ Error is assigned as to the instructions defining "membership" and "affiliation." No objection was made to such instructions in the trial court and hence the correctness thereof is not subject to appellate review.[22] Moreover, the trial court in the challenged respects gave fully and accurately the instructions suggested by this court in Travis v. United States, supra.[23]

■ Error is predicated on the failure of the trial court to instruct that the falsity of the statements must be established by the testimony of two independent witnesses or by one witness and corroborating circumstances. Such

17. Hupman v. United States, supra, 219 F.2d at page 247; United States v. Valenti, 3 Cir., 207 F.2d 242, 244.

18. Suhay v. United States, 10 Cir., 95 F.2d 890, 894, certiorari denied 304 U.S. 580, 58 S.Ct. 1060, 82 L.Ed. 1543.

19. Patterson v. United States, 10 Cir., 62 F.2d 968, 970.

20. Cf. Myres v United States, 8 Cir., 174 F.2d 329, 339, certiorari denied 338 U.S. 849, 70 S.Ct. 91, 94 L.Ed. 520;

Ochoa v. United States, 9 Cir., 167 F. 2d 341, 344.

21. Cf. Pietch v. United States, 10 Cir., 110 F.2d 817, 822, 129 A.L.R. 563, certiorari denied 310 U.S. 648, 60 S.Ct. 1100, 84 L.Ed. 1414.

22. Corbin v. United States, supra, 253 F. 2d at page 647, and cases cited in Note 4.

23. 10 Cir., 247 F.2d 130, 135.

an instruction is required in perjury cases.[24] This is not a perjury case but is a prosecution for violation of the false statement statute. The only reported appellate court decision of which we are aware involving the application of the perjury rule to a false statement case is that of Fisher v. United States, 9 Cir., 231 F.2d 99, 105–106, wherein it was held that the rule was not applicable. We agree. The application of the perjury rule to a prosecution for violation of § 1001 by a false non-communist affidavit would merely thwart the attainment of the end which Congress sought to accomplish by the enactment of § 9(h). An essential element of "membership" is the desire of an individual to belong to an organization.[25] Affiliation imports less than membership but more than sympathy and requires "an adherence to or a furtherance of the purposes or objectives of the proscribed organization as distinguished from mere cooperation with it in lawful activities."[26] Desire to belong and an intent to adhere and further rather than merely sympathize are mental states. They can and must be proved or disproved by circumstantial evidence. A requirement of direct proof is a requirement of the impossible. In the case at bar evidence of two witnesses plus the defendant's own admissions gave substantial ground for a finding of falsity. No instruction on the perjury rule was requested. On the authorities heretofore cited this in itself is enough to dispose of the point.

Two witnesses for the government testified that they had submitted to government agents written statements or reports relating to matters embraced within their testimony concerning incidents which tended to throw light on the question of whether defendant was a member or affiliate of the Communist Party. Following with meticulous care the procedure outlined in 18 U.S.C. § 3500, the trial court required the production of the documents, examined them in camera, excised portions of them, and made them available to the defense in excised form. The constitutionality of § 3500 is attacked on the grounds that it denies due process and is ex post facto legislation.

■■■■ The background of § 3500 and its relationship to the decision in Jencks v. United States, supra, is well known and need not be repeated here.[27] This defendant can object to the application of § 3500 only if the result thereof was to deny him something to which he was entitled under the rule announced in Jencks. There is no contention that he was denied access to any statement or report which Jencks requires the government to produce. His objection then can go only to the act of the trial court in excising certain parts of some statements and reports in accordance with the procedure established in § 3500. Subparagraph (c) thereof provides that when the United States claims that any statement ordered to be produced contains matter which does not relate to the subject matter of the testimony of the witness, the court shall examine the statement in camera and excise such portions. The entire text of the statement must be preserved and made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. In the instant case there was such a claim made by the United States and the excision of certain material by

24. Weiler v. United States, 323 U.S. 606, 609, 65 S.Ct. 548, 89 L.Ed. 495; Hammer v. United States, 271 U.S. 620, 626, 46 S.Ct. 603, 70 L.Ed. 1118.

25. Cf. Concurring opinion of Justice Burton in Jencks v. United States, 353 U.S. 657, 679, 77 S.Ct. 1007, 1 L.Ed.2d 1103.

26. Bridges v. Wixon, 326 U.S. 135, 143–144, 65 S.Ct. 1443, 1448, 89 L.Ed. 2103.

27. United States v. Palermo, 2 Cir., 258 F.2d 397, certiorari granted 79 S.Ct. 236; United States v. Spangelet, 2 Cir., 258 F.2d 338; United States v. Consolidated Laundries Corporation, D.C., 159 F.Supp. 860; United States v. Papworth, D.C., 156 F.Supp. 842, affirmed, 5 Cir., 256 F.2d 125; Senate Report No. 981, 85th Cong. 1st Sess., set out in 1957 U.S.Code Cong. and Adm.News, p. 1861 et seq.

the trial court. We have examined and compared the original texts and the excised copies.[28] In each instance we find that the excision did not relate to the subject matter of the testimony of the witness and accordingly hold that the trial court was correct in its rulings with regard thereto.

 The provisions of subparagraph (c) for examination by the court in camera and the excision by the court of unrelated matter do not violate due process. Jencks specifically reaffirms and re-emphasizes the essentials necessary to lay a foundation for a demand to produce as stated in Gordon v. United States, 344 U.S. 414, 419, 73 S.Ct. 369, 97 L.Ed. 447.[29] It was there said that the demand must be for "specific documents" and it must not propose "any broad or blind fishing expedition." Jencks says that [30]

"Relevancy and materiality for the purposes of production and inspection, with a view to use on cross-examination, are established *when the reports are shown to relate to the testimony of the witness*." (Emphasis supplied.)

The language of § 3500 follows that of the court. However, § 3500 permits the excision of part of a report. The argument is that if any part of a statement relates to the subject matter of the testimony of the witness, the entire, unexcised statement must be produced. Surely if an entire statement can be refused when it does not relate to the subject, it is entirely proper to deny access to a part of a statement on the ground that such part does not have the necessary relation-ship. The provisions for preservation of the entire text make possible appellate review of the trial court's actions. Unless some provision is made for the restriction of production to matters related to the testimony of the witness, the door is opened for "the broad or blind fishing expedition" which the Supreme Court has condemned.

The assertion that the application of § 3500 violates the constitutional prohibition against ex post facto legislation is predicated upon the alternative contentions that § 3500 involves substance rather than procedure and that if it does involve procedure, it operates to the substantial disadvantage of the defendant. It is noteworthy that every United States Court of Appeals which has considered the applicability of § 3500 to offenses committed prior to the enactment of that statute has determined that the statute must be followed.[31] The 1957 decision in Jencks fixed the law as applicable to the instant 1952 offense. So far as change of substance is concerned, the argument is good only if § 3500 makes a change in the substantive law as declared by Jencks. The only change suggested to affect this case is that resulting from the authorization by § 3500 for excision of those parts of a statement which do not relate to the subject of the testimony of the witness. We do not consider that a change of substance. The purpose of § 3500 is to provide a procedural means for the application and enforcement of the Jencks rule. It does so by a method which is fair and reasonable and which in this case did not operate to any disadvantage to the de-

28. The reports prepared by the two witnesses, Duran and Fortson, were furnished to the defense without excision. Summaries prepared by government agents, apparently from these written reports amplified by oral statements, did not purport to set out oral statements "substantially verbatim." Excisions from such summaries concerned matters unrelated to the testimony of the witnesses and to the issues of this trial.

29. 353 U.S. 667, 77 S.Ct. 1012, 1 L.Ed.2d 1103.

30. 353 U.S. 669, 77 S.Ct. 1014, 1 L.Ed.2d 1103.

31. Cf. United States v. Palermo, 2 Cir., supra; United States v. Lev, 2 Cir., 258 F.2d 9, certiorari granted 79 S.Ct. 231; United States v. Rosenberg, 3 Cir., 257 F.2d 760, certiorari granted 79 S.Ct. 233; Scales v. United States, 4 Cir., 260 F.2d 21; Papworth v. United States, 5 Cir., supra; Bergman v. United States, 6 Cir., 253 F.2d 933; Lohman v. United States, 6 Cir., 251 F.2d 951.

fendant.[32] As the application of § 3500 did not deprive the defendant of anything to which he was entitled under Jencks, there was no violation of any of his constitutional rights.

Objection is made to the action of the trial court in excising parts of one of the statements which defendant gave to government agents. The entire text of that statement was made a part of the record and we have examined the original text and compared it with the excised copy. The excised portions do not relate to any issue presented in the trial. Without the excisions, there was the danger of harm to individuals who were not on trial, who did not appear as witnesses, and who were in no way connected with the offense charged against Sells. The excisions properly and reasonably protected such individuals and in no way prejudiced the defendant.

 Error is assigned on the grounds that the verdicts are inconsistent and that the trial court improperly denied a defense motion that the government elect between the two counts in the indictment. The argument is that the status of membership covered by the first count is repugnant to the status of affiliation covered by the second count. In Travis v. United States, supra, it was held that an indictment similar to that involved here was not duplicitous.[33] The evidence was sufficient to support a conviction under each count.[34] It is not necessary to consider whether verdicts must be consistent[35] or whether the situation here is that of splitting a single transaction into a multiple offense,[36] because the same two-year sentence was imposed on each count and the sentences were made to run concurrently. In such circumstances the error, if any, is not prejudicial and there is no basis for reversal on appeal.[37]

The contempt conviction is attacked only on the ground of uncertainty of sentence. This presupposes reversal of the indictment convictions. Our holding to the contrary disposes of the point.

The judgments are severally affirmed.

32. Cf. Beazell v. State of Ohio, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216; Thompson v. State of Utah, 170 U.S. 343, 351, 18 S.Ct. 620, 42 L.Ed. 1061.

33. 247 F.2d 134–135.

34. The jury could have reasonably inferred that membership existed at the critical date. Also, if the jury accepted the defendant's claim of severance of membership, it could have reasonably found that affiliation existed.

35. In Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356, it was said that "consistency in the verdict is not necessary."

36. Cf. Fisher v. United States, supra, 231 F.2d at page 103.

37. Lawn v. United States, 355 U.S. 339, 362, 78 S.Ct. 311, 2 L.Ed.2d 321; Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; Evans v. United States, 153 U.S. 608, 609, 14 S.Ct. 939, 38 L.Ed. 839; Loney v. United States, 10 Cir., 151 F.2d 1, 8; Astwood v. United States, 8 Cir., 1 F.2d 639, 643; Fisher v. United States, supra, 231 F. 2d at page 103. Cf. United States v. Hines, 2 Cir., 256 F.2d 561, 562–563.