**UNITED STATES of America,**
**Plaintiff,**

v.

**Seymour R. RAYOR, Defendant.**

**Crim. No. 30550.**

United States District Court
S. D. California,
Central Division.

April 16, 1962.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Section, by Richard G. Sherman, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Ernest R. Mortenson, Pasadena, Cal., for defendant.

YANKWICH, District Judge.

On February 24, 1962, an information was filed by the United States Attorney for the Southern District of California

charging the defendant, Seymour Rayor, on or about March 7, 1956, with violation of § 7206(1) of Title 26 U.S.C.A., in that the defendant

"did wilfully and knowingly make and subscribe the United States Corporation Income Tax Return of Rayor's Inc., of Inglewood, California, for the calendar year of 1955, which return was verified by a written declaration that it was made under the penalty of perjury, and which said return he did not believe to be true and correct as to every material matter in that the said return reported taxable income in the amount of $103,533.74, whereas, as he then and there well knew and believed, said corporation had taxable income in the amount of $118,204.24, in violation of Section 7206 (1). Internal Revenue Code of 1954, Title 26, United States Code, Section 7206(1)."

The referred-to clause under which the information was drawn reads:

"Any person who—

"* * * Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter"

shall be guilty of an offense.

A motion for a Bill of Particulars (Rule 7(f), Federal Rules of Criminal Procedure, 18 U.S.C.A.) filed by the defendant on March 1, 1962, was granted by the Court and the Bill was filed on March 15, 1962. It disclosed that the Government relied upon the fact that the defendant had made deductions for personal gambling losses which he paid with company checks. The Motion for Bill of Particulars[1] and the Bill of Partic-

1. "MOTION FOR BILL OF PARTICULARS

"The Defendant moves the Court for an Order directing the United States of America to file a Bill of Particulars of the following matters embraced within the Information:

"1. State the items of income and the specific amount of each of the items which compose the taxable income figure in the amount of $118,204.24. ("Taxable income" as hereinafter referred to shall mean taxable income as that term is used in Line 34 of the Corporation Income Tax Return, Form 1120)

"2. State the basis on which, or the reason why, each of the items listed in No. 1 above is included in the taxable income figure of $118,204.24.

"3. State the total income reported by Rayor's Inc. on Line 15 of the 1955 Corporation Income Tax Return.

"4. State the amount of total deductions appearing on Line 31 of said Return.

"5. State the amount of total income which should have been entered on Line 15 of said Return in arriving at the taxable income figure of $118,204.24.

"6. State the amount of total deductions which should have been entered on Line 31 of said Return to arrive at taxable income in the amount of $118,204.24.

"7. State whether Rayor's Inc. was mailed a Statutory Notice on or about March 14, 1961 in which the Government asserted against Rayor's Inc. an income

tax deficiency for the calendar year 1954 in the amount of $42,157.27.

"8. State whether Rayor's, Inc. paid the Government $42,157.27 on or about March 27, 1961 to satisfy said tax deficiency.

"9. State whether the Government followed the provisions of Section 1.61–6(a) of Treasury Regulations in computing the said $42,157.27 in tax deficiency.

"10. State whether the Government, in computing the $42,157.27 tax deficiency included in 1954 sales the receipts from jobs in the Englewood Country Club in the amount of $23,194.96 and in the Crenshaw Tract in the amount of $310,867.41 or a total of $334,062.37.

"11. State whether the above two jobs were completed in 1954 or 1955.

"12. State whether the $334,062.37 was included in taxable income in computing the taxable income figure of $118,204.24 for 1955.

"13. State whether the Government in computing a tax deficiency of $42,187.27 for 1954 allowed additional cost of sales for the Englewood Country Club and Crenshaw Tract jobs in the amount of $252,991.08.

"14. State whether said costs of $252,991.08 had been allowed for 1955 in computing the taxable income figure of $118,204.24.

"15. State what the taxable income would be for 1955 if the above amount of $334,062.37 were subtracted from 1955

ulars [2] are printed in the margin.

The disclosure made by the Bill of Particulars, considered as additions to the allegations of the information, reveals the following facts:

The defendant and his wife, who is not indicted, each own fifty percent (50%) of Rayor's Inc., a construction corporation located in Inglewood, California. Rayor paid personal (Las Vegas) gambling losses with corporation checks which he charged on the company books as "miscellaneous construction expenses" for the year 1955.

Subsequent to the filing of the returns for 1954, 1955 and 1956, Rayor, Inc. was audited by the Internal Revenue Service and it was then determined that included in the construction expenses of Rayor, Inc. was $17,000.00 in personal gambling

sales and the above amount of $252,991.08 were subtracted from 1955 costs of sales.

"16. State what the taxable income would be for 1955 after making the following adjustments:

Deductions:
(a) Allowable Entertainment Expense 5,379.50

Taxable Income Corrected $118,204.24

"(2) See explanation in (1) above.
"(3) $207,282.93.
"(4) $103,749.19.
"(5) $227,332.93.
"(6) $109,128.69.
"(7) Yes.
"(8) Yes.
"(9) Yes.
"(10) Yes.
"(11) 1954.
"(12) Yes.
"(13) Yes.
"(14) Yes.
"(15) $37,132.95. However, after giving effect to income and costs ($350,800.-83 and $284,701.31, respectively) previously reported in 1956 but properly reportable in 1955 correct Taxable Income amounts to $103,232.47.

"(16) Same as (15) with reservations contained therein.
"(17) $48,180.88.
"(18) $48,337.54.
"(19) $1,025,687.13.
"(20) $825,744.61.
"(21) $199,942.52.
"1). Subtract $334,062.37 from sales;
"2). Subtract $252,991.08 from cost of sales;
"3). Add $20,050.00 to income, and
"4). Subtract $5,379.50 as additional business expense.

"17. State what the total income tax liability would be for 1955 after the above adjustments shown in No. 16 were made.

"18. State the amount of the total income tax shown on the 1955 Corporation Income Tax Return.

"19. State the amount Rayor's, Inc. reported as gross receipts or 'income' for the calendar year 1955.

"20. State the amount Rayor's, Inc. reported as cost of sales for the calendar year 1955.

"21. State the amount of gross profit Rayor's Inc. reported for the calendar year 1955."

2.                    "BILL OF PARTICULARS

"The United States of America hereby files a Bill of Particulars as requested by the Defendant on March 1, 1962, and makes available such information as requested by said Defendant:

| | | | |
|---|---|---|---|
| (1) Taxable Income Reported | | | $103,533.74 |
| Additions: | | | |
| (a) Gambling Losses | | $17,000.00 | |
| Ck #7613 | $ 6,000.00 | | |
| Ck #7614 | 8,000.00 | | |
| Ck #7615 | 3,000.00 | | |
| | $17,000.00 | | |
| (b) Unsubstantiated Costs | | $ 3,050.00 | |
| Ck #8854 | 450.00 | | |
| Ck #8892 | 2,600.00 | | |
| | $ 3,050.00 | | $ 20,050.00 |
| | | | $123,583.74" |

losses. As a result of this audit there were additional disallowed expenses of $3,050.00 and the taxpayer received credit in the amount of $5,379.50 in entertainment expense which he had not previously deducted. These adjustments increased Rayor, Inc.'s taxable income for 1955 from $103,533.74 to $118,204.24, which would have created a tax liability of $55,966.20.

When the adjustments reflected by the Internal Revenue Service are merged with the proper accounting method, the following results are obtained for the year 1955:

|  | Taxable Income | Tax Liability or (Refund) |
|---|---|---|
| Corrected 1955 | $ 88,561.87 | $ [7,785.37] |
| Add: Gambling Loss | 17,000.00 | |
| Disallowed checks | 3,050.00 | |
| Total | 108,611.87 | |
| Less: Allowed Entertainment Expense | 5,379.50 | |
| Corrected 1955 Taxable Income and [refund] after consideration of the above factors | 103,232.37 | [ 156.86] |
| Decrease in Refund due to the above adjustments | | $ 7,628.51 |

Contending that a proper computation of the tax would not have shown a deficiency for the year 1955, the defendant insists that no offense is charged in the information. The argument is grounded upon the contention that before a statement under § 7206(1) of Title 26 U.S. C.A. can be said to be violative of the Section, there must be *falsity as to a material fact*. The argument would apply to this Section the ruling of the Court of Appeals for the Ninth Circuit in Poonian v. United States, 9 Cir., 1961, 294 F. 2d 74.

In that case a panel of the Court, with one Judge dissenting, held that to constitute a violation of § 1001 of Title 18 U.S.C.A. the matter, the falsity of which is alleged, must be material. In this respect the ruling conforms to that obtaining in other circuits. (See, Rolland v. United States, 5 Cir., 1953, 200 F.2d 678; Freidus v. United States, 1955, 96 U.S.App.D.C. 133, 223 F.2d 598) But these cases are not decisive of the point before us because, as stated, they arose *not* under § 7206(1) of Title 26 U.S.C.A., but *under the more general* Section, § 1001 of Title 18 U.S.C.A.

A comparison of these two sections shows clearly that § 7206(1) *does not* make materiality a decisive factor. So the teaching of those cases does not apply.

The Government was entitled to proceed against the defendant under several sections. It could have charged him with attempt to evade the income tax in violation of § 7201 of the 1954 Internal Revenue Code, 26 U.S.C.A. It could also have charged him with making a false statement to a Government agency. (18 U.S.C.A. § 1001) Or it could have charged him, *as it did*, with violation of the special section relating to false statement under which the information is drawn. (26 U.S.C.A. § 7206(1)) When this is the situation, the choice lies with the Government, and it is not the privilege of the defendant to say that the Government should have proceeded under a dif-

ferent section. In Taylor v. United States, 9 Cir., 1950, 179 F.2d 640 the Court uses this significant language:

"Congress may make each separate step in a prohibited transaction a separate offense." (p. 643) [3]

(See, Catrino v. United States, 9 Cir., 1949, 176 F.2d 884, 886)

■ When the choice is made under this principle, no constitutional norm is violated. In Albrecht v. United States, 1927, 273 U.S. 1, 11, 47 S.Ct. 250, 71 L.Ed. 505, the Court says:

"There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction which it has power to prohibit and punishing also the completed transaction."

Consistent with this policy the Supreme Court has undeviatingly declined to concede that in tax matters acts which overlap to some extent cannot be prosecuted or punished separately. Thus, in one of the earliest cases arising under the Internal Revenue Act of 1918, (United States v. Noveck, 1927, 273 U.S. 202, 206, 47 S.Ct. 341, 71 L.Ed. 610) the Court held that the enactment of § 253 of the Act punishing willful evasion did not repeal the general perjury statute, § 125 of the Criminal Code. (See, Ex parte Cohen, 9 Cir., 1951, 191 F.2d 300, 303, per Denman, Chief Judge)

In United States v. Beacon Brass Co., 1952, 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61, the Court held that a willful attempt to evade or defeat income tax by making a false statement to treasury representatives violated § 145(b) of the Internal Revenue Code of 1939 and could be prosecuted either under it or § 1001 of Title 18 U.S.C.A. because, reasoned the court,

"the enactment of other statutes expressly outlawing false statements in particular contexts, e. g., 18 U. S.C. (Supp. V) §§ 1010, 1014, negates the assumption—which was

the foundation of the decision of the court below—that Congress intended the making of false statements to be punishable only under § 35(A)." (p. 46, 73 S.Ct. p. 79, 97 L.Ed. 61)

■ In Achilli v. United States, 1957, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918 the Court rejected the contention that the enactment of § 3613(a) of the Internal Revenue Code of 1939, making it punishable *as a misdemeanor* for a person to deliver to the Director

"any false or fraudulent list, return, account, or statement, with intent to defeat or evade the valuation, enumeration, or assessment intended to be made * * *"

prevented prosecution *for a felony* under § 145(b) of that Act punishing willful evasion of the tax. (See, Parmagini v. United States, 9 Cir., 1930, 42 F.2d 721, 724–725; And see the writer's opinion in United States v. Harris, 1939, D.C., 26 F.Supp. 788) And separate or consecutive acts may be prosecuted although they arose out of a single incident. (See, Ebeling v. Morgan, 1915, 237 U.S. 625, 629–631, 35 S.Ct. 710, 59 L.Ed. 1151; Blockburger v. United States, 1932, 284 U.S. 299, 303–305, 52 S.Ct. 180, 76 L.Ed. 306; Gore v. United States, 1958, 357 U.S. 386, 388–390, 78 S.Ct. 1280, 2 L.Ed. 2d 1405) As the Government had the right to choose prosecution under § 7206 (1) of Title 26 U.S.C.A., the question of materiality of statements to insure verity in tax returns should be decided by reference to that Section alone and not by a narrow interpretation of *what is material* under some other section. The more so, as the Section *does not* specify the scope of the materiality, the falsity as to which it punishes.

What it proscribes is the making of a statement which the taxpayer

"does not believe to be true and correct as to every material matter."

The test of materiality is whether the statement was *material to the contents*

---

3. The teachings of this case, soon after the decision was made, were adopted and applied in the Ninth Circuit. (Llanos-

Senarillos v. United States, 9 Cir., 1949, 177 F.2d 164).

of the return. Obviously it is material because it is required to be made in order that the taxpayer estimate and compute his tax correctly. The 1954 Internal Revenue Code defines income and deductions with great precision. (See, e. g. 26 U.S.C.A. §§ 61 to 273)

**Deductions**

"one obtains not as [a matter] of right but as of grace." (United States v. Olympic Radio and Television, 1955, 349 U.S. 232, 235, 75 S. Ct. 733, 99 L.Ed. 1024)

The burden of proving that he is entitled to it rests on the taxpayer. (Factor v. Commissioner of Internal Revenue, 9 Cir., 1960, 281 F.2d 100, 110, and cases in Notes 8 and 9)

This being the case, the Internal Revenue Service, if it is to audit properly the return and allow or disallow claimed deductions, must have complete and truthful disclosure. And we must assume that the Congress had this in mind when it made punishable so many different acts which may result in evasion. (United States v. Beacon Brass Co., supra, 344 U.S. p. 46, 73 S.Ct. 77, 97 L.Ed. 61) And neither

"the Government nor an accrual-basis taxpayer may cause an item to be deducted in a year other than the one in which it accrued." (United States v. Consolidated Edison Co., 1961, 366 U.S. 380, 385, 81 S.Ct. 1326, 6 L.Ed.2d 356)

Consequently, what is claimed as deductible from gross income must be stated truthfully and is of utmost materiality. No doubt, this is the reason why § 7206(1) stresses belief in the truthfulness and correctness of the statement to which the written declaration or verification is attached. Where truth is not present, the section is violated. Materiality in matters of this character lies in the

"intent to protect the authorized functions of the governmental departments and agencies from the perversion which might result from the deceptive practices described."

(United States v. Gilliland, 1941, 312 U.S. 86, 93, 61 S.Ct. 518, 85 L.Ed. 598)

(And see, United States v. Quirk, E.D. Pa., 1958, 167 F.Supp. 462, 464, and United States v. Quirk, 3 Cir., 1959, 266 F.2d 26, the rulings in which are approved by the Court of Appeals for the Ninth Circuit in Brandow v. United States, 1959, 268 F.2d 559)

As said by the Court of Appeals for the District of Columbia in Weinstock v. United States, 1956, 97 U.S.App.D.C. 365, 231 F.2d 699, 701–702:

"The test is whether the false statement *has* a natural tendency to influence, or *was* capable of influencing, the decision of the tribunal in making a determination required to be made."

Income taxation differs from state property taxation. One of the differences that is fundamental is that in fixing a state property tax a public official, State, county or municipal, assesses the value of the property and he or a public body fixes annually the rate of taxation to be paid. (84 C.J.S. Taxation §§ 373–420)

The state property taxpayer, if dissatisfied with the assessment, may appear before the proper authority, sitting as a Board of Equalization, and protest the assessment. So his function is minimal.

The federal income tax law, on the contrary, while defining income and deductions and fixing the tax makes the taxpayer the sole or, at least, the first judge, —subject, of course, to later auditing by the Internal Revenue Service—*of what he owes* to the Government for the taxable year. In this manner the income tax is a self-assessing system. The taxpayer becomes his own assessor. "Taxation by confession" Mr. Justice Robert H. Jackson once called it. (As quoted by Philip M. Stern in "The Missing 4 Billion in Taxes", The New York Sunday Times Magazine, April 15, 1962, p. 70) And his statement has utmost significance for a proper audit of the return.

The Government was entitled, as of March 7, 1956, to a statement which stated the gross income truthfully and correctly and which *did not* claim as legitimate business expenses personal gambling losses. The auditing of the return, in the light of the returns for the other years, which later developed that the omission of these falsely claimed deductions would have made *no* difference in the defendant's tax liability for the year 1955, cannot be retrojected to the date of the false statement, so as to confer verity on it.

The defendant cannot be given the benefit of later-occurring events to justify what was a palpable attempt to charge off gambling debts as legitimate business expenses. For the defendant, even if he did believe that he could charge off a gambling loss, *as such,* could not charge it off as a *legitimate business expense.* When he did so, the statement was untruthful. For the Government had a right to believe, *before acting on the return,* that the return reflected truthfully the income and expenditures. And it was entitled to receive, *as of the date of the return,* when the estimated taxes or part of them were tendered, the correct amount of claimed deductions.

A somewhat similar situation arose under the National Labor Relations Act. (Sells v. United States, 10 Cir., 1958, 262 F.2d 815) The case was prosecuted under § 1001 of Title 18 U.S.C.A. and concerned the filing of a noncommunist affidavit under the National Labor Relations Act. (§ 9(h), as amended, 29 U.S. C.A. § 159(h)) It was contended that the affidavit, even though false, could not form the basis of prosecution because it was not shown that it was actually used by the National Labor Relations Board. In effect, it was contended that the truth of the matter was not material because there was no showing that the union was in compliance with the Act or availed itself of the facilities of the Board. Rejecting this contention the Court of Appeals for the Tenth Circuit said:

"Materiality is not dependent upon the use of the Board facilities by the union. The test is not use *but right to use.* The filing of the noncommunist affidavits is 'the key that makes available to the union the benefits of the Act.' These benefits are of the utmost importance to labor unions. The attainment of the *right to* these benefits by a false statement establishes beyond question the materiality of that false statement." (p. 819) (Emphasis added)

The Court of Appeals for the Ninth Circuit, in rejecting the contention that an affidavit given to two revenue agents seeking information in a tax investigation was not material under § 1001 of Title 18 U.S.C.A., because it *did not* induce any governmental action, adopted the same criterion and held that the test is whether the statements

"were material and *calculated* to induce action or reliance by an agency of the United States." (Brandow v. United States, supra, 268 F.2d p. 565) (Emphasis added)

This case contains a thorough review of a large number of cases involving materiality under § 1001 of Title 18 U.S. C.A., some of which have already been discussed in this opinion. They need not be reviewed again here.

■ In perjury, (18 U.S.C.A. § 1621) with which the defendant here seeks to compare § 7206(1) of Title 26 U.S.C.A., the correction or retraction of a perjurious statement, even during the course of the same proceeding, does not prevent prosecution. (United States v. Norris, 1937, 300 U.S. 564, 574, 57 S.Ct. 535, 81 L.Ed. 808) So here, the fact that an auditing of the tax return for the same and other years did, *ultimately,* show that there would have been *overpayment rather than deficiency,* of the tax for 1955, even if the gambling debts *had not* been falsely deducted, *does not* exculpate the defendant from the falsity of the statement when given.

Admittedly, as stated by Chief Judge Charles Wyzanski of the District of Massachusetts, in a recent case:

"a federal perjury prosecution may be based upon a wilfully false statement about a matter not punishable by the federal criminal law." (United States v. Worcester, 1961, D.C., 190 F.Supp. 548, 569)

The motion to dismiss will, therefore, be denied.