**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph DiVARCO and Joseph Arnold, Defendants-Appellants.**

**No. 72–1804.**

United States Court of Appeals, Seventh Circuit.

Argued April 26, 1973.

Decided Aug. 14, 1973.

Rehearing Denied Oct. 10, 1973.

See also, D.C., 343 F.Supp. 101.

Raymond J. Smith, Chicago, Ill., for defendants-appellants.

James R. Thompson, U. S. Atty., William T. Huyck, Glynna W. Freeman, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before MOORE, Senior Circuit Judge,* and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

The defendants Joseph DiVarco and Joseph Arnold were charged in separate counts of an indictment with willfully and knowingly making and subscribing to a false statement on their respective 1965 federal income tax returns, which returns were verified by written declarations that they were made under the penalties of perjury, in violation of 26 U.S.C. § 7206(1). The two defendants were also indicted for conspiracy in violation of 18 U.S.C. § 371 in that they conspired with Irwin Davis, an unindicted co-conspirator, in violation of 26 U. S.C. § 7206(1), to report a false source of income from Chemical Mortgage & Investment Corporation, of which Davis was a stockholder and agent, "so as to conceal from the Internal Revenue Service of the United States the true source of the income reported and to prevent examination by the said Internal Revenue Service as to the truth or falsity of the income reported."

A jury found the defendants guilty as charged and each was sentenced to one year on the conspiracy count and to five years on probation on the substantive counts, the probation to run consecutively to the period of imprisonment.

On this appeal, appellants raise three separate grounds for reversal: the impropriety of prosecution under 26 U.S.C. § 7206(1) when there was no showing of an understatement of income; improper activity of the district judge; and the erroneous admission into evidence of defendant Arnold's prior felony conviction.

I

Chapter 75, subchapter A, of the Internal Revenue Code of 1954, as amended, 26 U.S.C. §§ 7201–7241, is concerned with tax crimes. Sections 7201–7207, inclusive, which in the aggregate relate to attempts to evade or defeat tax, to failures to act, and to fraud, all include the word "willfully" in their respective contexts. Specifically, § 7206 is a felony statute and reads:

"§ 7206. Fraud and false statements.

Any person who—

(1) Declaration under penalties of perjury.

* Senior Circuit Judge Leonard P. Moore of the Second Circuit is sitting by designation.

Willfully, makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . .

\* \* \* \* \* \*

shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution."

■■ Appellants contend that since there was no showing by the Government that they had in fact understated their income, 26 U.S.C. § 7206(1) was not applicable and only the general federal false statement statute, 18 U.S.C. § 1001, related to their alleged misconduct. Prosecution under that section was allegedly barred by the statute of limitations.[1] The district court in a memorandum opinion, United States v. DiVarco, 343 F.Supp. 101 (N.D. Ill. 1972), concluded that the source of income was a "material matter" and that the willful and knowing misstatement of the source of income was covered by the prohibition in § 7206(1).

It is true, as contended by the defendants and observed by Judge Will in his opinion, that most, if not all, of the cases involving misstatement of source of income also involved an understatement of taxable income. However, "[o]ne of the more basic tenets running through all the cases is that the purpose behind the statute is to prosecute those who intentionally falsify their tax returns regardless of the precise ultimate effect

that such falsification may have." 343 F.Supp. at 103.

We agree with and adopt Judge Will's opinion as to materiality. The plain language of the statute does not exclude the matter of the source of income from the definition of "material matter." In light of the need for accurate information concerning the source of income so that the Internal Revenue Service can police and verify the reporting of individuals and corporations, a misstatement as to the source of income is a material matter.[2]

■ As to the defendants' argument that they should only have been charged under 18 U.S.C. § 1001, "the choice lies with the Government, and it is not the privilege of the defendant to say that the Government should have proceeded under a different section." United States v. Rayor, 204 F.Supp. 486, 489–490 (S.D.Cal.1962), appeal dismissed, 323 F.2d 519 (9th Cir. 1963), cert. denied, 375 U.S. 993, 84 S.Ct. 632, 11 L. Ed.2d 479 (1964).

■■ Appellants also contend that, as in Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943), it was incumbent on the Government to prove specific intent and evil motive and purpose. Since the Government never proved that appellants had other sources of income which they were seeking not to disclose, it is argued that the proof of evil purpose was insufficient. While Spies involved a violation of the predecessor to 26 U.S.C. § 7201, § 145(b) of the Revenue Act of 1936, which proscribed attempts to "evade or defeat any tax" and not false swearing on a return, nevertheless, it is clear that willfulness

---

1. The fact that the conduct may also be in violation of 18 U.S.C. § 1001 is not dispositive of the case. United States v. Beacon Brass Co., Inc., 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61 (1952). Overlap does exist within the criminal provisions of the Internal Revenue Code itself. *e. g.*, 26 U.S.C. §§ 7206(1), 7207; United States v. Bishop, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (filed May 29, 1973).

2. We note that the Court in Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943), indicated that Internal Revenue Code section 145(a) made it a misdemeanor willfully to fail to make a return, keep records, or supply information when required *"without regard to existence of a tax liability."* 317 U.S. at 496, 63 S.Ct. at 367. (Emphasis supplied.)

under § 7206(1) also requires proof of bad purpose or evil motive. United States v. Bishop, *supra,* 412 U.S. at 359, 93 S.Ct. 2008. This is not to say, however, that the evil motive must have been to evade the payment of taxes, which was what was involved in *Spies.* Here there was evidence from which the jury could have found, and apparently did, that the defendants reported income but falsely reported the source. Evil motive, of course, was not admitted. It seldom is. Of necessity, it is ordinarily proven by other evidence from which the inference may fairly be drawn that the evil motive existed at the pertinent time.

While the district court in its charge to the jury did not advert to bad purpose or evil motive *in haec verba,* we find no difficulty in discerning from the thorough coverage afforded by the instructions that the jury was told of the necessity of the *mens rea.* The following extracts from the charge sufficiently demonstrate the point:

> "That is the statute. Any person who wilfully makes and subscribes any return, statement or other document which contains or is verified by a written declaration that it is made under the penalties of perjury and which he does not believe to be true and correct as to every material matter, shall be guilty of an offense against the United States.

> \*　\*　\*　\*　\*　\*

> "Second, that the maker of the return did not believe the return to be true and correct as to a material matter. Obviously, that is what the statute says. Has to be a knowing and willful filing of a document which contains a statement which the maker does not believe to be true and correct.

> \*　\*　\*　\*　\*　\*

> "If, on the other hand, you are not satisfied the government has established both of those propositions beyond a reasonable doubt, if they fail to establish either one, that is, that the return was false as to the source of the income, and that the defendant did not reasonably believe it to be true and correct as to a material matter, then you will find the defendant innocent, not guilty as charged.

> \*　\*　\*　\*　\*　\*

> "I used the word 'false' for example, talking about a false statement. Well, false means a statement, if untrue when made and then known to be untrue by the person making it or causing it to be made. In law, false is something a little bit more than just an inaccurate statement. It is an inaccurate statement known to be inaccurate.

> "People make inaccurate statements accidentally. That is not a false statement in law. That is just an incorrect statement, inaccurate statement. When you say 'false' you mean an inaccurate statement which the maker knows [is] inaccurate.

> "I have talked about knowing and willfully. You should understand what knowing and willfully are all about.

> "Well, they are just about what you think they are. Knowing and willfully means that you are doing something deliberately, not accidentally, not inadvertently, not mistakenly; that you are doing something—you know, the reason why we put this in the law is that people won't be convicted for accidental, inadvertent, mistaken acts. They will only be convicted for doing something knowingly and willfully, deliberately, intentionally, with a purpose to do something which the law forbids, or to fail to do something which the law requires.

> "Which brings me to the subject of intent.

> "Under our system of justice, two things are required to make a person guilty of violating the law. He has to do an act and he has to do it with the requisite criminal intent. Specific intent is what is talked about in cases of this kind.

> "As that term implies, specific intent means more than just the inten-

tion to do an act. It means not only the intention to do the act, but to do the act knowingly and knowing that it is an act which the law forbids, purposely. In other words, intending to violate the law."

The evidence was more than sufficient to sustain the charge of violation of § 7206(1).

## II

■ Appellants next contend that the district judge's participation in the trial of this case violated the principles of fair trial enunciated in United States v. Hill, 332 F.2d 105 (7th Cir. 1964). In Hill, the district judge participated extensively in the cross-examination of the defendant and his witnesses while asking only two questions of Government witnesses, both of which brought out answers highly favorable to the Government. Further, the judge knew that the answers would be favorable as he had heard the testimony of the same witnesses in a previous trial. The case was a close one but this court held that "the cumulative effect of the Court's questions and statements constituted prejudicial error requiring a new trial." 332 F.2d at 107.

Although the district judge in the present case did not remain woodenly and silently on the bench, it is our conclusion, after reading the transcript of the trial, that his questioning of witnesses and his colloquies with counsel were for the purpose of clarifying the issues for the jury and expediting the trial. The case was not without complexity and the presentation of evidence could have resulted in confusion if the issues were not made clear. Thus, with respect to both the Government and the defendants, the district judge sought to explain to the jury the purpose of testimony which at times was only tenuously connected to the gravamen of the offense.

■ The district judge has a duty to see that the trial does not become confusing or repetitious. "A trial judge is

at liberty to question a witness to clarify a particular point, and where, as here, he does so without engaging in advocacy or displaying prejudice or partiality, no error can be predicated upon such examination." United States v. Esquer, 459 F.2d 431, 435 (7th Cir. 1972). In fact, in Hill, supra, the court went even further by quoting approvingly from Gomila v. United States, 146 F. 2d 372, 374 (5th Cir. 1944), to the effect that "[i]n aid of truth and in furtherance of justice, the court may question a witness,—in fact, he may call and question a witness not used by either party . . . ." A defendant does not have a constitutional right to a confused trial. The emphasis in all of the opinions in this area has been on the necessity for the trial judge to avoid any hint of partiality, for instance, either by questioning only defense or only prosecution witnesses or by eliciting only information favorable to the prosecution or by appearing to disbelieve the testimony of any witness.

The district court judge made it clear to the jurors that they were to decide the case. "I will save you the trauma and strain of trying [to figure out how the judge would decide it] because I will tell you right now what I think the verdict in this case should be; and I believe the verdict in this case should be what the 12 of you unanimously decide it is, and that is all."

■ Nevertheless, because of the gravity of the charge that "the trial court's extensive participation in the trial of this case was contrary to the principles enunciated [in Hill]," we have examined each of the claimed instances of improper judicial intrusion. These, of course, should not be considered in isolation but in the context of the testimony and trial proceedings as a whole. On that basis we reach the same conclusion this court did in United States v. Cassell, 452 F.2d 533, 537 (7th Cir. 1971): "We are not persuaded the questions asked were improper as an abuse of discretion or a violation of judicial ethics. The questions were for the pur-

pose of expediting the trial and clarifying testimony and therefore proper." Our examination of the record does not convince us that the jurors could upon any reasonable basis have concluded that the judge was other than fair and impartial.

We have not deemed it necessary to extend the length of this opinion by a detailed recital of the claimed transgressions of the trial judge. However, we do note specifically two matters not connected with questions during the course of the trial.

The first of these matters appears to resolve itself into a complaint that the judge had provided the Government with an additional theory of liability which culminated in an instruction. The language of the instruction was not suggested by any of the parties; however, we are unaware of any basis for declaring an instruction improper because it is phrased in the court's own words. The instruction complained of did nothing more than analyze steps in resolving the basic issue in dispute as to whether or not the defendants reasonably believed that the income they had reported as coming from Chemical Mortgage & Investment did in fact come from that source.

Secondly, the trial judge had conducted a private voir dire of each juror concerning possible prejudice from extensive media coverage of the trial. However, it was the defense counsel who had suggested the necessity of such an inquiry, and he also agreed that no court reporter need be present. Our consideration of the judge's report of the colloquy with one of the jurors leaves us unimpressed with the appellants' contention that the judge somehow improperly commented on the evidence to that juror. We note particularly that trial counsel made no objection at that point to the reported colloquy and at the conclusion of the report expressed his satisfaction with the inquiry and the jury.

III

■ The final ground for reversal raised on this appeal concerns the admission for impeachment purposes of Arnold's prior felony convictions. Arnold had three previous convictions, one in 1927 for automobile theft, one in 1935 for postal extortion, and one in 1948 for violation of the Dyer Act. The district court judge ruled that he would permit impeaching questions to be asked about the latter two convictions but that the first conviction, which occurred when the defendant was eighteen years old, was too remote and was therefore inadmissible. He indicated he would give a cautionary instruction on the two convictions which he would admit. Defense counsel then requested permission to introduce the two prior convictions on direct without waiving objection. The court granted this request.

While Arnold only was directly involved, DiVarco claims that, since the case was decided on the relative credibility of Arnold and Government witness Davis, permitting Arnold's impeachment by an extortion conviction constituted reversible error as to both defendants.

The appellants rely in this appeal, as they did in the trial court, on United States v. McCarthy, 445 F.2d 587 (7th Cir. 1971). While the appellants appear in this appeal to direct our attention only to the 1935 conviction, both it and the 1948 conviction would seem to exceed the ten-year limitation expressed in Proposed Rule 609(b) referred to in *McCarthy*. However, if the 1935 conviction was properly admitted there would seem to be no question as to the propriety of the 1948 conviction.

The suggestion was made in *McCarthy*, which case was considered and found not here applicable by the district court, that the Proposed Rules of Evidence for the United States District Courts and Magistrates should be used by the district courts "as guidelines and at least given consideration in the exer-

cise of their discretion in making evidentiary rulings." 445 F.2d at 591. (Footnote omitted.)

At the outset it must be noted that the Proposed Rules, which were to have become effective automatically on July 1, 1973, have not become so and very apparently will not become effective as submitted. See United States v. Kissane, 478 F.2d 1098 (7th Cir., 1973), and Report of Subcommittee on Criminal Justice, House Committee on the Judiciary, June 28, 1973, proposing substantial amendments and deletions to the submitted Rules.

Further, factually in *McCarthy* two prongs of Proposed Rule 609 came into play. In addition to the venerability of the conviction, the defendant there had received a full pardon. Also, there was substantial reason for believing that the evidence of the prior conviction brought about the conviction being appealed in *McCarthy*.

Without regard then to a precise time limitation, we turn to the particular facts of the present case to determine whether the admission of the evidence was an abuse of discretion requiring reversal. We think it was not.

In our opinion, a proper test, in the absence of rule limitation, is whether the trial judge believes that the prejudicial effect of impeachment far outweighs the probative relevance of the prior conviction to the issue of credibility. See Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936, 939 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). Although the age of the prior conviction is relevant to the above-stated balancing test, the type of crime previously committed and the circumstances of the trial in which the prior conviction is introduced are also highly relevant.

The Government witness Davis had been questioned regarding his prior convictions for mail fraud by both the prosecution and the defense. In exercising his discretion, the trial judge observed:

"I do not think that the jury should be left with the impression that Mr. Arnold has led a spotless life whereas Mr. Davis has been a man convicted. The only way you can do that is to let the evidence of Mr. Arnold's past activities in with a cautioning instruction that, one, as with respect to Mr. Davis, prior convictions are a factor which the jury may take into consideration, but they may also take into consideration the length of time which has elapsed since the last of any such convictions in weighing the credibility of any particular witness.

"I think with that kind of an appropriate precautionary instruction, we get a balanced presentation of the relative credibility of the two witnesses who, I suspect, will turn out to be the key witnesses in this case."

It is further to be noted that the two prior convictions of Davis were for theft, which is "universally regarded as conduct which reflects adversely on a man's honesty and integrity." Gordon v. United States, *supra* at 940.[3] Also, in the *Gordon* case it was observed that where a verdict depended primarily on the jury's assessment of the credibility of the accused and of his accuser, "there was greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses was to be believed." 383 F.2d at 941.

The trial judge did give precautionary instructions reading as follows:

"There are some additional factors which are relevant in weighing the testimony of a witness. For example, testimony of a person who is engaged in assisting the government in the nature of an informer; that is, who pro-

---

3. The House subcommittee, while preserving time limitations but with changed language, did note, "Subdivision (a) [of Rule 609] was amended so that convic- tions of crimes involving dishonesty or false statements are always admissible to attack credibility."

vides evidence against the defendant for pay or for immunity from prosecution or personal advantage, or for vindication, should be examined and weighed by you with greater care than the testimony of an ordinary witness. This is a factor which you may take into consideration in weighing his testimony. You will have to decide whether Mr. Davis' testimony here has been affected adversely as to its accuracy by any interest or by prejudice against the defendants.

"It is also a factor which you may take into consideration in weighing the credibility of a witness that a particular witness has been convicted on a previous occasion of a felony. I want you to understand in connection with Mr. Arnold, who is a defendant as distinguished from just a witness, that that is all that that prior conviction is relevant to, his credibility. He cannot be guilty of the offense here charged because some years back he was convicted of some other charges. Those charges are relevant only to the credibility, the extent to which they affect, as Mr. Davis' more recent convictions are relevant to his credibility, and the fact that there is a longer period of time between the convictions is another factor which you may take into consideration in deciding what effect it has on the credibility; but they are no evidence of guilt, no evidence of guilt.

"Those prior convictions have the same effect so far as Mr. Arnold is concerned as they have so far as Mr. Davis is concerned, except for the difference in the length of time, and that is, they are factors which you may take into consideration in weighing whether or not their testimony is accurate."

The instruction as to impeachment by evidence of conviction, following immediately after the instruction on Davis's status as an informer, was clearly beneficial to the defendants by highlighting both Davis's informer status and the

fact that Arnold's convictions were more remote.

While granting that the conviction admitted in the trial of the present case was substantially more venerable than would be considered generally acceptable by modern standards, we, under the particular circumstances here involved, cannot say the action of the trial court constituted an abuse of discretion.

For the reasons hereinbefore set out, the judgments of conviction of the defendants are affirmed.

Affirmed.